Citation Nr: 1702600 
Decision Date: 01/31/17 Archive Date: 02/09/17

DOCKET NO. 11-29 693 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUE

Entitlement to service connection for a bilateral knee disability. 


REPRESENTATION

Appellant represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

Appellant


ATTORNEY FOR THE BOARD

T. Hal Smith, Counsel


INTRODUCTION

The Veteran served on active duty from April 1965 to April 1968. 

This matter is before the Board of Veterans' Appeals (Board) on appeal from an August 2009 rating decision of the Houston, Texas, Regional Office (RO) of the Department of Veterans Affairs (VA). That decision, in pertinent part, denied reopening of the claim for service connection for a bilateral knee disability. The claim was before the Board in February 2015. At that time, the claim was reopened and remanded for additional evidentiary development. It has now been returned for further appellate consideration. 

In March 2013, the Veteran testified before a Veterans Law Judge (VLJ) at a Travel Board hearing. A transcript is of record. In April 2016, the Veteran was informed that the VLJ before whom he had testified was unavailable to further address his decision and that he was entitled to an additional hearing if he so desired. 
See 38 C.F.R. § 7107(c) (West 2014). The Veteran responded that he did not want another hearing. Accordingly, the Board may proceed with a decision in this appeal. 

The Board notes that additional medical evidence was submitted after the most recent readjudication of this claim in the June 2015 Supplemental Statement of the Case (SSOC), and no waiver from the Veteran was received. However, this evidence is duplicative of evidence that has been considered in previous adjudications of the claim. Therefore, the Board finds that a waiver is not required to proceed with adjudication of the Veteran's claim. See 38 C.F.R. § 20.1304 (2016). 

This appeal was processed using the Veterans Benefits Management System (VBMS). Accordingly, any future consideration of this appellant's case should take into consideration the existence of this electronic record. In addition to the VBMS file, there is a Virtual VA paperless claims file associated with the Veteran's claim. 

FINDINGS OF FACT

1. The Veteran's right knee disorder is not of service onset or otherwise related thereto, and degenerative joint disease (DJD) was not manifest within one year of the Veteran's separation from service. 

2. The Veteran's left knee disorder is not of service onset or otherwise related thereto, and DJD was not manifest within one year of the Veteran's separation from service. 


CONCLUSIONS OF LAW

1. The criteria for entitlement to service connection for a right knee disorder have not been met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1137, 5107 (West 2014); 
38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309 (2016). 

2. The criteria for entitlement to service connection for a left knee disorder have not been met. 38 U.S.C.A. §§ 1101, 1110, 1112, 1113, 1137, 5107 (West 2014); 
38 C.F.R. §§ 3.102, 3.303, 3.304, 3.307, 3.309 (2016). 


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

VA's duty to notify was satisfied by a June 2009 letter. See 38 U.S.C.A. §§ 5102, 5103, 5013A (West 2014); 38 C.F.R. § 3.159 (2016); see also Scott v. McDonald, 789 F.3d 1375 (Fed. Cir. 2015). 

As for the duty to assist, VA obtained all available service treatment records (STRs), service personnel records (SPRs), and all pertinent treatment records. This matter was remanded by the Board for further development in February 2015, to include updating the medical evidence on file and obtaining a VA examination and medical opinion pertaining to the claim. Additional records were added to the claim and the Veteran was scheduled for a VA examination to assess the current nature and etiology of his bilateral knee disorders. The requested examination was conducted in April 2015. The VA examiner reviewed the claims folder, to include all relevant evidence pertaining to the claim, performed a complete medical examination, considered the Veteran's history, and provided an etiological opinion. It is the Board's conclusion that the examiner adequately addressed the questions contained in the remand directives and provided a factual and medical basis for his answers. As such, the Board finds that the June 2014 remand directives were substantially complied with. See Stegall v. West, 11 Vet. App. 268, 271 (1998). 

During the Board hearing, the VLJ discussed with the Veteran the issue on appeal, the evidence required to substantiate the claim, and asked questions to elicit information relevant to the claim. This action supplemented VA's compliance with the VCAA, 38 C.F.R. § 3.103 (2015), and Bryant v. Shinseki, 23 Vet. App. 488 (2010). As the Veteran has not identified any additional evidence pertinent to the claim and as there are no additional records to obtain, the Board concludes that no further assistance to the Veteran in developing the facts pertinent to the claim is required to comply with the duty to assist. 

Service Connection - In General

Service connection may be established for a disability resulting from personal injury suffered or disease contracted in the line of duty or for aggravation of preexisting injury suffered or disease contracted in the line of duty. 
38 U.S.C.A. § 1110 (West 2014); 38 C.F.R. § 3.303 (2016). 

Service connection may be granted for any disease diagnosed after discharge, when all the evidence, including that pertinent to service, establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d) (2016). 

In addition, certain chronic diseases (e.g., DJD) may be presumed to have been incurred during service if the disorder becomes manifest to a compensable degree within one year of separation from active duty. 38 U.S.C.A. §§ 1101, 1112 (West 2014); 38 C.F.R. §§ 3.307, 3.309 (2016). 

The chronicity provisions are applicable where evidence, regardless of its date, show that a veteran had a chronic condition, as defined in 38 C.F.R. § 3.309(a) (2016), in service, or during an applicable presumptive period, and still has that disability. That evidence must be medical unless it relates to a condition as to which lay observation is competent. 38 C.F.R. § 3.303(b) (2016). 

This rule does not mean that any manifestations in service will permit service connection. To show chronic disease in service there is required a combination of manifestations sufficient to identify the disease entity, and sufficient observation to establish chronicity at the time as distinguished from merely isolated findings or a diagnosis including the word "chronic". When the disease entity is established, there is no requirement of evidentiary showing of continuity. When the fact of chronicity in service is not adequately supported, then a showing of continuity after discharge is required to support the claim. 38 C.F.R. § 3.303(b) (2016). 

The United States Court of Appeals for Veterans Claims has held that, in order to prevail on the issue of service connection, there must be (1) medical evidence of a current disability; (2) medical or, in certain circumstances, lay evidence of inservice incurrence or aggravation of a disease or injury; and (3) medical evidence of a nexus between the claimed inservice disease or injury and the present disease or injury. Hickson v. West, 12 Vet. App. 247, 253 (1999); see also Pond v West, 12 Vet. App. 341, 346 (1999). 

The Board acknowledges the Veteran's statements that his knee pain began during service and has continued since that time. The Board notes that the Veteran is competent to report his experience and symptoms in service and thereafter. Layno v. Brown, 6 Vet. App. 465, 469 (1994); Buchanan v. Nicolson, 451 F.3d 1331 (Fed. Cir. 2006). A veteran can attest to factual matters of which he or she had first-hand knowledge, e.g., experiencing pain in service, reporting to sick call, being placed on limited duty, and undergoing physical therapy. See Washington v. Nicholson, 19 Vet. App. 362, 368 (2005). 

The United States Court of Appeals for the Federal Circuit has held that lay evidence is one type of evidence that must be considered and competent lay evidence can be sufficient in and of itself. The Board, however, retains the discretion to make credibility determinations and otherwise weigh the evidence submitted, including lay evidence. See Buchanan, 451 F.3d at 1335. Once evidence is determined to be competent, the Board must determine whether such evidence is also credible. See Layno, supra (distinguishing between competency ("a legal concept determining whether testimony may be heard and considered") and credibility ("a factual determination going to the probative value of the evidence to be made after the evidence has been admitted")); see also Barr v. Nicholson, 21 Vet. App. 303 (2007), 

The Board must assess the credibility and weight of all the evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. See Masors v. Derwinski, 2 Vet. App. 181 (1992); Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992); Gilbert v. Derwinski, 
1 Vet. App. 49 (1990). Equal weight is not accorded to each piece of evidence contained in the record; every item of evidence does not have the same probative value. 

Background

As noted in the Board's decision in February 2015, despite there being no record in the STRs of any knee injury, complaints, or findings (indeed, the Veteran admits he did not seek any medical attention during service for his in-service knee injuries), there is competent lay evidence showing that the Veteran did injure his knees during service. Specifically, there are numerous lay and buddy statements corroborating the Veteran's claim that he injured his knees during service. See, e.g., statements dated in 2009 and 2015 as submitted by friends, fellow servicemen, and his ex-wife. 

Of record are post service private records dated from 1972 to 1999 which are negative for complaints or findings associated with the knees. There is report, however, from a private facility in July 2001 showing that the Veteran had a left knee medial meniscal tear. He underwent an arthroscopic medial and lateral meniscal debridement with chondroplasty of the patellofemoral joint. There is a subsequently dated private report regarding the right knee in April 2003. At that time, magnetic resonance imaging (MRI) of the right knee showed a medial meniscus tear. Subsequently dated records from July 2003 reflect that the Veteran stated that his right knee problems had been present since being in the military. Specifically, he said that he was kicked across the leg during service. At this time, his complaints included pain, swelling, locking, catching, and difficulty with bending. His symptomatic medial meniscal tear, chronic acromioclavicular (ACL) tear was noted. The Veteran was to be scheduled for debridement. 

A private record dated January 15, 2009, refers to DJD in the knees. A private physician noted on a January 20, 2009, report that the Veteran was under his care for bilateral knee conditions. He had performed an arthroscopy on the left knee in 2001 and a total right knee replacement in 2007. 

A VA record dated in March 2009 reflects that the Veteran's osteoarthritis of the knees was stable. Subsequently dated records dated through 2013 show that osteoarthritis continued as a condition for which the Veteran was seen. 

The Veteran was examined by VA in April 2015. The examiner reviewed the claims file and summarized the Veteran's history regarding both knees, to include the negative STRs and his post service surgeries, as well as continued knee problems. It was also noted in detail that the Veteran alleged that initial injury to the knees was during service when he was kicked in the left knee and felt a pop. He also reported injury to both knees in a subsequent inservice fall. He further stated that when he got a job in 1996 that required him to be on his feet and walk/stand a lot, he noticed that his knees hurt quite a bit. He ultimately underwent left knee surgery in 2001 and right knee surgery in 2007. He now was getting injections into his left knee which provided some relief, although consideration was being given to having a total left knee replacement. 

Following review of the record and examination of the Veteran, the examiner opined that the Veteran's bilateral knee condition was less likely than not (less than 50 percent probability) incurred in or caused by the inservice injury. For rationale, it was noted that there was no documentation of treatment for, complaint of, or diagnosis of a knee condition during service (to include the absence of bilateral knee pathology on separation examination in April 1968), or for many years after service. 

A private physician reported in a June 2016 report that the Veteran's ailments included advanced arthritis of the "knee." 

Analysis

In statements of record, to include an October 2011 VA Form 9 and testimony at a March 2013 hearing, the Veteran alleged that his current bilateral knee disabilities were of service origin. Specifically, he said that he spent over two years walking and exercising on very unforgiving steel decks. He also reported that on one occasion while rushing to get to his assigned duty station, he fell off of a ladder and landed on his knee. Despite swelling and pain, he continued onto his assignment, but he has experienced ongoing knee problems, resulting in bilateral knee surgeries. 

In considering the evidence of record under the laws and regulations as set forth above, the Board concludes that the Veteran is not entitled to service connection for a right or left knee disorder. 

As related above, the STRs are negative for complaints, treatment, or diagnosis of a knee disorder. The Board acknowledges, however, that there are statements of record attesting to the fact that the Veteran initially injured his knees during service and that his complaints have continued since that time. The Board notes that a veteran is competent to report his experience and symptoms in service and thereafter. Layno and Buchanan, supra. While the Board believes that the Veteran did injure his knees during service, no chronic knee disorder was diagnosed, to include upon separation examination in April 1968. Moreover, many more years passed before additional knee complaints were recorded and knee disorders were diagnosed. See Maxson v. Gober, 230 F.3d 1330, 1333 (Fed. Cir. 200) (ruling that a prolonged period without medical complaint can be considered, along with other factors, as evidence of whether an injury or a disease was incurred in service which resulted in any chronic or persistent disability). See also Mense v. Derwinski, 1 Vet. Ap. 354, 356 (1991) (affirming the Board's denial of service connection where veteran failed to account for lengthy time period between service and initial symptoms of disability); Kahana v. Shinseki, 24 Vet. App. 428, 440 (2011) (Lance J. concurring) (the silence in a medical record can be weighed against lay testimony if the alleged injury, disease, or related symptoms would ordinarily have been recorded in the medical record being evaluated by the fact finder. 

In addition to the lack of evidence showing that a right or left knee disorder manifested during service or within close proximity thereto, the probative evidence of record does not link any current diagnosis to the Veteran's military service. 

The Veteran has asserted that in addition to inservice knee injuries, he sustained wear and tear on his knees on unforgiving steel decks. Nevertheless, the April 2015 VA examiner opined that the Veteran's current right and left knee disorders were not due to his military service. In rendering the opinion, he cited the lack of any bilateral knee pathology during service or until many years thereafter. As already noted, the VA examiner reviewed the claims file. This included the STRs, the Veteran's statements, and lay and buddy statements, before providing a rationale for the opinion provided. The examination report is factually accurate, fully articulated, and includes sound reasoning for the examiner's conclusions. Nieves-Rodriguez v. Peake, 22 Vet. App. 295, 304 (2008). Therefore, the Board finds the opinion to have significant probative value. There is no medical opinion showing otherwise. 

Based on the foregoing, the Board finds that a preponderance of the evidence is against the Veteran's claim for service connection for right and left knee disorders. Because the preponderance of the evidence is against the Veteran's claims, the benefit of the doubt provision does not apply. Accordingly, the Board concludes that service connection is not warranted for right and left knee disorders. 

 (CONTINUED ON NEXT PAGE)


ORDER

Entitlement to service connection for a bilateral knee disability is denied. 



____________________________________________
BARBARA B. COPELAND
Veterans Law Judge, Board of Veterans' Appeals

Department of Veterans Affairs