Citation Nr: 1826226 
Decision Date: 04/26/18 Archive Date: 05/07/18

DOCKET NO. 12-26 823 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Houston, Texas


THE ISSUES

1. Entitlement to service connection for allergic rhinitis. 

2. Entitlement to a compensable rating prior to September 29, 2008, and in excess of 30 percent disabling as of September 29, 2008 for hypertension with chronic kidney disease.


REPRESENTATION

Veteran represented by: Texas Veterans Commission


WITNESSES AT HEARING ON APPEAL

The Veteran and his spouse



ATTORNEY FOR THE BOARD

J. Cheng, Associate Counsel


INTRODUCTION

The Veteran served on active duty from July 1965 to December 1985.

This matter is before the Board of Veterans' Appeals (Board) on appeal from a June 2008 rating decision of the Houston, Texas Department of Veterans Affairs (VA) Regional Office (RO). The Board remanded the case in July 2017 and December 2017 for further development. The requested development has been completed and as such the Board finds compliance with the prior remand.

In April 2017, the Veteran testified at a Board videoconference hearing before the undersigned. A copy of the transcript of that hearing has been associated with the claims file.


FINDINGS OF FACT

1. Allergic rhinitis did not have its onset during the Veteran's active service and was not caused by his active service.

2. Prior to September 29, 2008, the Veteran's hypertension has been manifested by systolic blood pressure predominantly less than 160, diastolic blood pressure less than 100. 

3. The Veteran's chronic kidney disease was diagnosed on September 29, 2008.

4. From September 29, 2008 to July 25, 2011, the Veteran's hypertension with stage one to stage two chronic kidney disease has manifested in renal dysfunction with hypertension at least 10 percent disabling but not hypertension at least 40 percent disabling under Diagnostic Code 7101. It was not manifested by constant albuminuria with some edema; or, definite decrease in kidney function; or, persistent edema and albuminuria with BUN 40 to 80 mg%; or, creatinine 4 to 8mg%; or, generalized poor health characterized by lethargy, weakness, anorexia, weight loss, or limitation of exertion.

5. From July 26, 2011, the Veteran's hypertension with chronic kidney disease manifested from stage one to two to stage two to three, with decreased GFR, BUN, and creatinine levels. There was no evidence of persistent edema and albuminuria with BUN 40 to 80mg%; or, creatinine 4 to 8mg%; or, generalized poor health characterized by lethargy, weakness, anorexia, weight loss, or limitation of exertion.


CONCLUSIONS OF LAW

1. The criteria for service connection for allergic rhinitis are not met. 38 U.S.C. §§ 1110, 1131, 5107 (2012); 38 C.F.R. § 3.303 (2017).

2. Prior to September 29, 2008, the criteria for a compensable rating for hypertension have not been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.321, 3.326(a), 4.1, 4.3, 4.7, 4.10, 4.104, 4.115a, 4.115b, Diagnostic Codes 7101 (2017).

3. From September 29, 2008 to July 25, 2011, the criteria for a rating in excess of 30 percent for hypertension with chronic kidney disease have not been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.321, 3.326(a), 4.1, 4.3, 4.7, 4.10, 4.104, 4.115a, 4.115b, Diagnostic Codes 7101-7541 (2017).

4. From July 26, 2011, the criteria for a rating of 60 percent, but no higher, for hypertension with chronic kidney disease have been met. 38 U.S.C. §§ 1155, 5103, 5103A, 5107 (2012); 38 C.F.R. §§ 3.102, 3.159, 3.321, 3.326(a), 4.1, 4.3, 4.7, 4.10, 4.104, 4.115a, 4.115b, Diagnostic Codes 7101-7541 (2017).


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

VA provided the Veteran with 38 U.S.C. § 5103(a)-compliant notice in July 2007. 

The record also shows that VA has fulfilled its obligation to assist the Veteran in developing the claim, including with respect to VA examination of the Veteran. Neither the Veteran nor his representative has identified any deficiency in VA's notice or assistance duties. See Scott v. McDonald, 789 F.3rd 1375 (Fed. Cir. 2015).

Service Connection

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated during service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303. In order to establish entitlement to service connection, there must be (1) evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) a causal connection between the claimed in-service disease or injury and the current disability. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004).

The Board must assess the credibility and weight of all the evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. Masors v. Derwinski, 2 Vet. App. 181 (1992); Wilson v. Derwinski, 2 Vet. App. 614 (1992); Hatlestad v. Derwinski, 1 Vet. App. 164 (1991); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). Equal weight is not accorded to each piece of evidence contained in the record; every item of evidence does not have the same probative value.

The Board must determine whether the evidence supports the claim or is in relative equipoise, with the appellant prevailing in either case, or whether the preponderance of the evidence is against the claim, in which case, service connection must be denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990). 

Factual Background

The Veteran asserts that his rhinitis had its onset during active service when he was exposed to mountain cedar in Germany and has continued to experience allergic rhinitis since separation from active service. 

A review of the Veteran's service treatment records show that in June 1967, February 1968, February 1971, August 1977, and October 1985 reports of medical examination, on clinical evaluation, the Veteran's nose and sinuses were noted as normal. A February 1968 report of medical history noted the Veteran's reports of ear, nose, or throat trouble and sinusitis. However, the Veteran reported no hay fever. The evaluator noted in the February 1968 report of medical history that the Veteran had sinus trouble only while in Germany and that it was clear in the summer. STRs in August 1968 documented complaints of a chest cold and the Veteran was noted as having pharyngitis. An October 1968 STR noted the Veteran's complaints of sore throat and the Veteran was diagnosed with viral pharyngitis with viral syndrome. In January 1969, the Veteran was noted to have scattered wheezing, a light chest cold, and rhonchi. The provider diagnosed viral upper respiratory infection. A December 1969 STR noted the Veteran cough produced yellow brown sputum and the Veteran was diagnosed with bronchitis. A February 1971 report of medical history noted the Veteran denied ear, nose, or throat trouble, sinusitis, or hay fever. An April 1972 STR noted the Veteran's upper respiratory infection, sore throat, rhinorrhea, and nasal congestion, and was diagnosed with pharyngitis. A subsequent April 1972 STR noted there was moderate beta strep on throat culture. A November 1974 STR noted the Veteran's cough for several days and noted an impression of upper respiratory infection, bronchitis. A July 1975 STR noted the Veteran's sore throat began the day before and had productive cough for two weeks. The provider noted an impression of lymphadenitis, possibly bronchitis. A January 1982 STR noted that the Veteran had upper respiratory infection symptoms on December 19, 1981, with positive cough, no runny nose, tickle in the chest with chest congestion, some hoarseness secondary to cough, and that symptoms were worse at night. The provider also noted the Veteran's children had the same symptoms for three weeks. A subsequent 1982 STR noted an assessment of upper respiratory infection. 

Post service, the Veteran reported a personal history of allergy or hay fever on a June 1987 VA optometry examination record. An October 1989 VA treatment record noted the Veteran had allergies or hay fever. 

A November 1991 VA treatment record noted the Veteran was on medication for allergies during "cedar fever" time. 

A December 1991 VA treatment record noted the Veteran's reports of mountain cedar allergy condition with onset on December 9, 1991. Assessment was noted as allergies. 

An October 1992 VA treatment record noted the Veteran had allergies, especially from December to February. 

A November 1993 VA treatment record noted the Veteran's seasonal allergies. 

A November 1994 VA treatment record noted the Veteran had seasonal allergic rhinitis. The record noted the Veteran had allergies to mountain cedar.

A February 1995 VA treatment record noted that during mountain cedar season, the Veteran developed rhinitis, conjunctivitis, wheezing, coughing, shortness of breath, manifesting as rhinoconjunctivitis/asthma.

A September 1995 VA treatment record noted the Veteran was on shots for his seasonal allergy. 

VA treatment records from 1995 to 2002 show the Veteran's continued allergy treatment. 

In a July 2007 correspondence, the Veteran reported that his allergic rhinitis first appeared in 1981 in connection with mountain cedar pollen while stationed at Ft. Sam in Houston, Texas. 

In an April 2007 VA treatment record, in an Agent Orange registry examination, the provider noted allergic rhinitis and that the Veteran underwent desensitization in 2000. The provider noted this had been a problem since 1986.

In a January 2009 VA treatment record, the provider noted that the Veteran "also referred allergic rhinitis is service connected, [he] was seen per this condition while in active duty but after he was discharged went to see an allergic rhinitis."

In a June 2009 correspondence, the Veteran reported that he was first diagnosed in 1981 with allergic rhinitis due to mountain cedar pollen but that treatment was not noted in his medical records. The Veteran highlighted the gap in his medical records from 1978 to 1982. He stated he had three years of mountain cedar desensitization treatment in the late 1990s and that he had continued to use over the counter and prescription medications to control his symptoms. 

In the April 2017 Board hearing, the Veteran reported that when he was leaving service and throughout the most of it, he had constant upper respiratory infections, sinusitis, and stuffy noses. He stated that when he left service and returned to San Antonio, his allergies got so severe that he sought treatment at Wilford Hall for four years of immunizations to desensitize, starting in 1986. The Veteran indicated he had problems with allergic rhinitis prior to that. The Veteran's spouse stated that he was not diagnosed as allergic rhinitis but he had symptoms of allergic rhinitis in that his symptoms continued for weeks at a time. The Veteran's spouse explained that according to the American Academy of Immunology, Asthma and Allergy, the Veteran should have been referred to an allergist with the frequency of the presentation he had for these signs especially since they lasted over 10 days. She indicated a cold typically lasts 7 to 10 days whereas allergic rhinitis would last for an extended period of time and would be primarily seasonal depending on where you are. The Veteran's spouse stated that when the Veteran was in Germany, it seemed to go on almost year round but in San Antonio, the symptoms occurred from January to March. She indicated that was documented in 1982. She highlighted that his medical records were missing from 1978 to 1981 and that 1981 was when he came to San Antonio and would have been sanitized to mountain cedar and that was the immunology he went through after he saw an allergist. The Veteran's wife stated that San Antonio is the center for mountain cedar. She stated that the Veteran got so allergic to mountain cedar the first year they were back that he developed pneumonia, not enough to require hospitalization, and his symptoms were so severe every year even during the sensitization that he was practically incapacitated. The Veteran's spouse reported that still to this day after the desensitization, the Veteran had to start at least in October using the steroid eye drops, the steroid and decongestant nasal sprays, and inhalers as well as medications such as Claritin and decongestants. 

The Veteran was provided a VA examination for his rhinitis in November 2017. During examination, the examiner noted the Veteran's diagnosis of allergic rhinitis. The Veteran reported a history of symptoms of allergic rhinitis that began during active service and stated his disability had continued since then. After examination and interview of the Veteran, review of the entire claims file, review of all available medical records and current peer reviewed medical literature, the examiner opined that the Veteran's allergic rhinitis was less likely as not etiologically related to his period of service. The examiner acknowledged the Veteran's personal account of symptoms since service but found that the claims file did not contain evidence or diagnosis of allergic rhinitis during active service. The examiner highlighted the Veteran's October 1985 separation examination in which the Veteran denied experiencing any nose trouble or frequent colds, hay fever, or sinusitis that might suggest a chronic nasal condition such as allergic rhinitis. The examiner also noted there was no object evidence of record following service to establish chronicity of the Veteran's subjectively claimed symptoms. The examiner noted the Veteran's records indicated he was not diagnosed with allergic rhinitis until many years after leaving service. As such, the examiner found there was insufficient evidence to suggest a chronic condition resulted from service and that a nexus could not be established. 


Analysis

The Board finds that service connection for rhinitis has not been established. The Board acknowledges that the available STRs show ongoing complaints related to upper respiratory infections, pharyngitis, and bronchitis. However, the Board notes that except for one or two instances related to the nose, and not noted as due to allergies, the complaints were mainly related to a cough or respiratory infections. The Board also reiterates that in June 1967, February 1968, February 1971, August 1977, as well as the separation October 1985 reports of medical examination, on clinical evaluation, the Veteran's nose and sinuses were noted as normal. The Board further acknowledges that there appears to be missing STRs. When service records are incomplete, the Board has a heightened obligation to explain its findings and conclusions and carefully consider the benefit-of-the-doubt rule. See Cuevas v. Principi, 3 Vet. App. 542, 548 (1992); O'Hare v. Derwinski, 1 Vet. App. 365, 367 (1991). However, the case law does not lower the legal standard for proving a claim of service connection, but rather increases the Board's obligation to evaluate and discuss in its decision all of the evidence that may be favorable to the Veteran. See Russo v. Brown, 9 Vet. App. 46 (1996). Moreover, there is no presumption, either in favor of the claimant or against VA, arising from missing records. See Cromer v. Nicholson, 19 Vet. App. 215, 217-18 (2005) (wherein the Court declined to apply an "adverse presumption" where records have been lost or destroyed while in government control which would have required VA to disprove a claimant's allegation of injury or disease).

The Board notes that considering the Veteran and his spouse's description as to the ongoing and increasing severity of the Veteran's allergies during his return to Texas, there are still records available from 1982 until his separation in 1985 that fail to support such claims. His immunization occurred in the 1990s and the evidence of record do not show instances of allergies or hay fever until 1987 and 1989 and it was not until 1994 that a note specifically mentioned allergic rhinitis. The available STRs fail to note any instances of mountain cedar allergy of which the Veteran claims his allergic rhinitis is caused by. The Board also acknowledges the Veteran's claim that in January 2009, a VA treating provider noted that allergic rhinitis was service connected and that condition persisted. However, upon review of the aforementioned note, the VA treating provider made the comment in reference to the Veteran's claim that the rhinitis was service connected and simply reiterated the Veteran's reports that he was seen for rhinitis while in active duty. This was not an appropriate finding or opinion, but a restatement of the Veteran's subjective reports. Even if the Board were to consider the statement by the treating provider as a finding in support of a nexus, there was no indication the January 2009 VA provider based the opinion on a complete and adequate review of the Veteran's STRs and post-service medical records. There also was no rationale or explanation provided in support of an opinion. As such, the Board affords this finding no probative value. 

The Veteran's and his spouse's assertions concerning his allergic rhinitis have been considered. To the extent that the Veteran's opinion of a nexus between service and the disability, the Board finds his statements are not competent evidence. Whether a layperson opinion as to a nexus or a diagnosis is competent evidence depends on the facts of the particular case. One factor for consideration is the complexity of the question to be determined. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007) (providing an example in footnote 4 that a layperson would be competent to diagnose a simple condition such as a broken leg but not competent to diagnose a form of cancer). Another factor is whether the question can be answered by personal observation alone. Layno v. Brown, 6 Vet. App. 465 (1994) (layperson is competent to report only that which the person observed).

Whether the Veteran's allergic rhinitis had its onset during active service is not a question that can be determined by mere observation and is not a simple question. The Veteran and his wife have not been shown to possess the requisite medical training, expertise, or credentials needed to diagnose diseases of the nose or allergies or to provide etiologies of such disorders. The Veteran's spouse specifically indicated her specialty in renal related issues. The Veteran's spouse failed to specifically note her background also included specific knowledge as to allergetic disabilities. Nevertheless, the Board reiterates that there are no adequate third party opinions provided in support of the claim. Such lay evidence, to the extent provided, does not constitute competent medical evidence of the presence of a disability and lacks probative value. Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007). Nevertheless, the Board does not find the Veteran's spouse's testimony to outweigh the probative value of the November 2017 VA opinion that was based on a review of the entire claims file, on current peer reviewed medical literature, and provided an adequately supported and detailed rationale, especially in light of the objective evidence of record that also weighs against the claim.

Accordingly, the Board finds that service connection for allergic rhinitis is not warranted. The Board finds that the preponderance of the evidence weighs against this claim, and the claim must be denied. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102. 

Increased Rating

Disability ratings are determined by applying the criteria set forth in the VA Schedule for Rating Disabilities (Rating Schedule) found in 38 C.F.R. Part 4. 
38 U.S.C. § 1155. It is not expected that all cases will show all the findings specified; however, findings sufficiently characteristic to identify the disease and the disability therefrom and coordination of rating with impairment of function will be expected in all instances. 38 C.F.R. §§ 3.321(a), 4.1, 4.21. 

Where there is a question as to which of two evaluations shall be applied, the higher evaluation will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. 

Where entitlement to compensation has already been established and an increase in the disability rating is at issue, it is the present level of disability that is of primary concern. See Francisco v. Brown, 7 Vet. App. 55, 58 (1994). Nevertheless, where the evidence contains factual findings that show a change in the severity of symptoms during the course of the rating period on appeal, assignment of staged ratings would be permissible. See Fenderson v. West, 12 Vet. App. 119 (1999). 

Once the evidence has been assembled, it is the Board's responsibility to evaluate the evidence. 38 U.S.C. § 7104(a). The Secretary shall consider all information and lay and medical evidence of record in a case before the Secretary with respect to benefits under laws administered by the Secretary. It is VA's defined and consistently applied policy to administer the law under a broad interpretation, consistent, however, with the facts shown in every case. When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a matter, the Secretary shall give the benefit of the doubt to the claimant. 38 U.S.C. § 5107; 38 C.F.R. §§ 3.102, 4.3.

The Veteran's hypertension is rated as 10 percent disabling prior to September 29, 2008 under 38 C.F.R. § 4.104, Diagnostic Code 7101 for hypertensive vascular disease. Since September 29, 2008, the Veteran's hypertension has been associated with chronic kidney disease and rated as 30 percent disabling under 38 C.F.R. §§ 4.104, 4.115b, Diagnostic Codes 7101-7541. 

Diagnostic Code 7101 provides for a 10 percent rating when diastolic pressure is predominantly 100 or more, or when systolic pressure is predominantly 160 or more, or as a minimum evaluation for an individual with a history of diastolic pressure predominantly 100 or more who requires continuous medication for control. A 20 percent rating is provided if diastolic pressure is predominantly 110 or more, or if systolic pressure is predominantly 200 or more. A 40 percent rating is provided if diastolic pressure is predominantly 120 or more. A 60 percent rating is provided if diastolic pressure is predominantly 130 or more. 38 C.F.R. § 4.104, Diagnostic Code 7101.

Diagnostic Code 7541 pertains to renal involvement in systemic disease processes and directs that the disability is to be rated as renal dysfunction. 38 C.F.R. § 4.115(b). The criteria for rating renal dysfunction is provided by 38 C.F.R. § 4.115a. Renal dysfunction manifested by albumin constant or recurring with hyaline and granular casts or red blood cells; or, transient or slight edema or hypertension at least 10 percent disabling under Diagnostic Code 7101 warrants a 30 percent rating. A 60 percent rating requires renal dysfunction with constant albuminuria with some edema; or, definite decrease in kidney function; or, hypertension at least 40 percent disabling under Diagnostic Code 7101. An 80 percent rating is warranted for persistent edema and albuminuria with blood urea nitrogen (BUN) 40 to 80mg%; or creatinine 4 to 8mg%; or, generalized poor health characterized by lethargy, weakness, anorexia, weight loss, or limitation of exertion. Finally, a 100 percent rating is warranted for renal dysfunction requiring regular dialysis, or precluding more than sedentary activity from one of the following: persistent edema and albuminuria; or, BUN more than 80mg%; or creatinine more than 8mg%; or, markedly decreased function of kidney or other organ systems, especially cardiovascular.

Factual Background

VA treatment records in January 2006 to October 2006 document blood pressure readings of 140/80, 130/80, 150/80, 132/84, 124/70.

A December 2006 VA treatment record noted the Veteran's BUN of 25 mg/dL, creatinine of 1.0 mg/dL, and GFR of 74.6 mL/min. The provider noted the Veteran's kidney tests were okay. The record explained that a range of 5 to 22 mg/dL for BUN readings were normal and a range of 0.7 to 1.5 mg/dL for creatinine readings were normal. GFR readings of 60 mL/min or more indicated normal kidney function unless there were other evidence of renal disease, 30 to 59 mL/min indicated moderate kidney disease, 15 to 29 mL/min indicated severe kidney disease, and less than 15 mL/min indicated kidney failure. 

VA treatment records from February 2007 to December 2007 document blood pressure readings of 134/70, 178/76, 163/73, 130/65, 100/78, 100/60, 150/90, 155/78, 150/90.

A July 2007 VA treatment record noted the Veteran's BUN of 31 mg/dL, creatinine of 1.0 mg/dL, and GFR of 7.9 mL/min. The provider the Veteran's kidney tests were okay for now. 

In a July 2007 VA examination, the Veteran stated that his blood pressure was fairly well-controlled. The examiner noted the Veteran's continued use of medication to control his blood pressure and documented blood pressure readings of 100/78, 100/60, 100/60. 

VA treatment records from June 2008 to July 2008 document blood pressure readings of 149/61, 136/64, 127/59.

VA treatment records from September 2008 to December 2008 document blood pressure readings of 150/73, 160/80, 150/73.

A September 2008 treatment record by Dr. D.P. noted the Veteran's chronic kidney disease, stage two, due to hypertension and diabetes mellitus. 

A December 2008 VA treatment record noted the Veteran's BUN of 24 mg/dL and creatinine of 1.1 mg/dL. 

A January 2009 VA treatment record noted the Veteran's diagnosis of chronic kidney disease in September 2008.

VA treatment records from January 2009 to December 2009 document blood pressure readings of 111/53, 160/80, 142/71, 130/64, 123/73, 177/67, 160/70, 130/61, 152/64, 135/64, 140/65, 151/71, 142/68.

An August 2009 VA treatment record noted the Veteran's diagnosis of chronic kidney disease, stage one. 

VA and private treatment records from January 2010 to November 2010 document blood pressure readings of 136/65, 131/60, 147/74, 169/79, 140/80, 132/70, 158/77, 139/80.

A March 2010 VA treatment record noted the Veteran's chronic kidney stage disease, stage two. 

A March 2010 private treatment record from Renal Associates noted the Veteran's aggressive blood pressure control started in the mid 1990s and that control had been good for the past year or two and that the Veteran felt well. The Veteran denied anorexia, any urinary issues, and the provider noted no edema and fatigue. The assessment was noted as chronic kidney disease, stage two. 

A July 2010 private treatment record from Renal Associates noted the Veteran reported his fatigue worsened in the evening but denied anorexia, any urinary issues, and the provider noted no edema and that GFR improved. The assessment was noted as chronic kidney disease, stage one. 

VA and private treatment records from January 2011 to December 2011 document blood pressure readings of 161/80, 134/80, 137/62, 130-160/70s, 136/70, 157/60, 144/63, 139/56, 112/54, 138/74, 157/76, 166/77, 156/64, 170s systolic at home, 143/58.

A March 2011 private treatment record from Renal Associates noted the Veteran had chronic kidney disease, stage two, that had been relatively stable. The Veteran denied any urinary issues and anorexia. The provider noted there was no edema, no weight loss, and fatigue was improving.

An April 2011 private treatment record from Endocrinology-Nuclear Medicine Associates (ENMA) noted the Veteran's chronic kidney disease, stage two and GFR of 56 to 60 mL/min and creatinine of 1.2 mg/dL.

A July 2011 VA treatment record noted a renal sonogram that showed both kidneys demonstrated normal echogenicity without evidence of hydronephrosis or calculi. 

A July 26, 2011 VA treatment record noted the Veteran's chronic kidney disease, stage two to three, with a baseline creatinine of 1.0 to 1.3 mg/dL with unclear progression to 1.74 mg/dL. 

VA and private treatment records from January 2012 to November 2012 document blood pressure readings of 159/73, 150/80, 160/60, 158/72, 152/74, 148/63, 132/61, 143/65, 135-140/65-70, 174/77, 150/80, 122/56.

January 2012 private treatment records from Endocrinology Nuclear Medicine Associates (ENMA) noted the Veteran had chronic kidney disease, stage two and that his GFR was at 58-62 mL/min.

A January 2012 VA treatment record noted the Veteran had chronic kidney disease stage two to three, nonproteinuric, and needed better blood pressure control. The record noted the Veteran's home blood pressure was consistently above 150 systolic and had a blood pressure reading of 160/60 during evaluation. 

A March 2012 private treatment record from Harr & Deschner noted the Veteran had chronic kidney disease, stage two, and had no edema.

An April 2012 private treatment record from ENMA noted the Veteran had chronic kidney disease, stage two, and his GFR was 61 mL/min.

In a July 2012 VA examination, the examiner noted the Veteran did not have voiding dysfunction or urinary tract or kidney infections. 

A July 2012 VA treatment record noted the Veteran had chronic kidney disease, stage three with BUN at 36 mg/dL, creatinine at 1.4 mg/dL. No edema was noted. 

A September 2012 private treatment record from Harr & Deschner noted the Veteran BUN of 35 mg/dL, creatinine of 1.65 mg/dL, and GFR of 42 mL/min. 

A September 2012 private treatment record by Dr. M.B.H. noted the Veteran had chronic kidney disease, stage two, that was stable. The provider noted there was no edema.

A November 2012 private treatment record from ENMA noted the Veteran's creatinine of 1.38 mg/dL and GFR of 52 mL/min. The provider noted an assessment of chronic kidney disease, stage three, but that there was no edema.

A December 2012 private treatment record from LabCorp Houston showed the Veteran had a BUN of 29 mg/dL, creatinine of 1.43 mg/dL, and GFR of 50 mL/min. 

VA and private treatment records from January 2013 to December 2013 document blood pressure readings of 168/70, 144/64, 160/70, 146/62, 140/68, 146/74, 130/70s at home, 126/62, 120/68, 167/66, 157/66, 158/68, 132/78. 

A February 2013 private treatment record noted the Veteran's BUN of 43 mg/dL, creatinine of 1.69 mg/dL, and GFR of 41 mL/min. The Veteran denied anorexia and urinary issues but reported intermittent edema and that his fatigue was improving. The provider noted an assessment of chronic kidney disease, stage three, in which the creatinine level had risen.

An August 2013 private treatment record from Renal Associates noted the Veteran felt tired from his blood pressures being normal. He denied urinary problems, anorexia, and edema. 

A September 2013 private treatment record from ENMA noted the Veteran had chronic kidney disease, stage three. 

A December 2013 private treatment record from ENMA noted the Veteran exercised on the treadmill occasionally. The provider noted the Veteran had no edema and had chronic kidney disease, stage two to three, with decreasing creatinine levels. 

VA and private treatment records from February 2014 to September 2014 document blood pressure readings of 146/70, 130-140s/70, 142/67, 146/63, 119/63,150/70, 140/80. 

A February 2014 private treatment record by Dr. M.B.H. noted the Veteran's chronic kidney disease improved to stage two. The provider noted there was no edema. 

A June 2014 private treatment record from Renal Associates noted the Veteran's BUN of 29 mg/dL, creatinine of 1.28 mg/dL, and GFR of 57 mL/min. The provider noted there was no edema but the Veteran indicated fatigue. There was no anorexia or urinary problems. 

A July 2014 private treatment record from ENMA noted the Veteran exercised and was active at his house. The provider noted an assessment of chronic kidney disease, stage three. 

VA and private treatment records from January 2015 to November 2015 document blood pressure readings of 158/58, 175/58, 155/55, 148/52, 138/80, 110/44, 130/82, 122/45, 139/53, 148/72. 

A January 2015 private treatment record from ENMA noted the Veteran had chronic kidney disease, stage three. The provider noted the Veteran was not walking as much as recommended due to joint pains but controlled his diet fairly. The Veteran denied unexplained fatigue and edema. 

A February 2015 private treatment record by Dr. M.B.H. noted an assessment of chronic kidney disease, stage two, and that the Veteran did not have edema. 

An April 2015 private treatment record from Renal Associates noted a BUN of 33 mg/dL, creatinine of 1.5 mg/dL, and GFR of 46 mL/min. The Veteran reported fatigue but denied urinary issues and anorexia. The provider noted intermittent edema and noted an assessment of chronic kidney disease, stage two.

An August 2015 private treatment record by Dr. M.B.H. noted the Veteran overall felt well, had chronic kidney disease, stage two, with BUN of 29 mg/dL and creatinine of 1.54 mg/dL. 

An August 2015 private treatment record from LabCorp Houston noted the Veteran's BUN of 32 mg/dL, creatinine of 1.41 mg/dL, and GFR of 50 mL/min. 

An August 2015 private treatment record from Renal Associates noted the Veteran had intermittent edema and fatigue. The Veteran denied anorexia or any urinary issues. The provider noted an assessment of chronic kidney disease, stage three. 

A November 2015 private treatment record by Dr. N.A.L. noted the Veteran walked at least 30 minutes every day, controlled his diet fairly well, had no edema and denied unexplained fatigue. The provider noted the Veteran's chronic kidney disease, stage three. 

VA and private treatment records from February 2016 to October 2016 document blood pressure readings of 148/86, 137/46, 127/50, 138/44, 142/66, 146/88, 144/52, 138/55, 123/42.

A February 2016 private treatment record by Dr. M.B.H. noted the Veteran fell well overall and that his monitored blood pressure at home was usually normal. The provider noted an impression of chronic kidney disease, stage two. There was negative edema.

In a May 2016 private treatment record from Renal Associates noted the Veteran's BUN of 47 mg/dL, creatinine of 1.85 mg/dL, and GFR of 36 mL/min. The provider noted there was no edema, urinary tract infection (UTI), or urinary problems. The provider noted an assessment of chronic kidney disease, stage three. 

A June 2016 private treatment record from Renal Associates noted the Veteran's BUN of 31 mg/dL, creatinine of 1.29 mg/dL, and GFR of 55 mL/min. The Veteran reported feeling well, denied urinary problems, fatigue, or anorexia. The provider noted there was no edema and included an assessment of chronic kidney disease, stage three. The provider indicated the Veteran's renal function had remained stable for six years in early stage three. 

In a July 2016 VA examination, the examiner noted the Veteran's blood pressure readings of 148/68, 144/60, and 142/60. The examiner noted the date of onset for his chronic kidney disease symptoms as 2010. The Veteran stated the disability began with decreasing GFR and frequent abnormal BUN. The examiner noted the disability was currently stage two kidney disease and that the disability had worsened, including frequent medication to maintain blood pressure. The examiner noted symptoms included tiredness and fatigue with no history of urinary tract or kidney infections, dialysis, or kidney transplant or removal. No edema was found in the right or left lower extremities. The examiner noted that examination of the abdomen revealed umbilical reducible hernia and EKG results showed severe bradycardia and the Veteran declined to be transported via ambulance to the nearest hospital. His wife drove the Veteran and the examiner noted labs were canceled due to the Veteran being directed to the hospital. The examiner noted the Veteran's chronic kidney disease was active. 

A July 2016 private treatment record from ENMA noted the Veteran controlled his diet fairly well and led an active lifestyle at his farm. The Veteran denied unexplained fatigue and the provider noted the Veteran's chronic kidney disease; stage three, with no edema. 

An August 2016 private treatment record by Dr. M.B.H. noted the Veteran's blood pressure was good at home, that the Veteran overall felt well, and had chronic kidney disease, stage two. There was edema, weight loss or gain, and fatigue noted. 

An October 2016 private treatment record from Renal Associates noted the Veteran's BUN of 35 mg/dL, creatinine of 1.42 mg/dL, and GFR of 49 mL/min. The provider noted there was no edema, fatigue, UTI, or urinary difficulties. An assessment of chronic kidney disease, stage two, was noted and that creatinine had risen back to 1.4 mg/dL, meaning some loss of function had occurred over the past six years but that recent serial readings of renal function had been stable. 

VA and private treatment records from March 2017 to September 2017 document blood pressure readings of 148/68, 158/50, 139/63, 152/55, 152/52, 138/63, 148/84.

A March 2017 private treatment record from Renal Associates noted the Veteran's BUN of 39 mg/dL, creatinine of 1.47 mg/dL, and GFR of 47 mL/min. The Veteran felt well. The provider noted there was no edema, fatigue, UTI, or urinary difficulties. An assessment of chronic kidney disease, stage two, was noted and that renal function was stable for four years but mild improvements had reversed. 

An April 2017 private treatment record by Dr. N.A.L. noted the Veteran's chronic kidney disease, stage three. The provider noted the Veteran controlled his diet fairly well, denied unexplained fatigue, and had no edema.

In the April 2017 Board hearing, the Veteran and his wife testified. The Veteran's wife reported that she had been a registered nurse for 53 years and that 25 years of that was as a case manager. She stated one of her areas of expertise was kidney disease. The Veteran reported that his kidney function had varied over the years and was sitting at stage three at the time of the hearing. The Veteran's spouse reported the Veteran's blood pressure went up to 150 and that when the Veteran's private treating provider would adjust his hypertension medication to get his blood pressure down to a therapeutic level, the Veteran's renal function deteriorated, with severe swelling in his legs. The Veteran reported that his labs had gone from normal to stage one and then had progressively varied in 2010 after a traumatic pneumothorax when he was hospitalized and went to stage four, with VA records showing worsening to a current stage three. The Veteran's spouse reported that the Veteran has had over 57 changes of medication to try to get a mixture together that would control his hypertension that would not damage his kidneys. 

A June 2017 private treatment record from Renal Associates noted the Veteran's BUN of 34 mg/dL, creatinine of 1.43 mL/min, and GFR of 49 mL/min. The Veteran reported that he felt well, denied urinary problems, had mild edema, and fatigue was getting worse. The provider noted an assessment of chronic kidney disease, stage two, and that renal function remained stable and had been for four to five years. 

A July 2017 Board remand found the July 2016 VA examination inadequate since the Veteran had a medical emergency that required hospitalization at the time of incomplete examination. Another examination was requested.

A September 2017 private treatment record by Dr. M.H.B. noted the Veteran's fatigue and edema. The provider noted the Veteran's chronic kidney disease, stage two. 

In a November 2017 VA hypertension examination, the examiner noted the Veteran's treatment plan included taking continuous medication for hypertension or isolated systolic hypertension. The examiner noted the Veteran did not have a history of diastolic blood pressure elevation to predominantly 100 or more. The examiner noted blood pressure readings of 162/94, 167/76, 159/73. 

In a November 2017 VA Kidney Conditions examination, the examiner noted the Veteran's chronic kidney disease included taking continuous medication. The Veteran reported that he was diagnosed with chronic kidney disease in 2010 as a result of abnormal findings on his labs and that he had been treated for hypertension since the 1980s. The Veteran reported to have continued routine labs taken every three to six months to monitor renal function. The examiner noted the Veteran did not require regular dialysis, did not have symptoms of urinary tract or kidney infections, did not have a history of urolithiasis, had never had a kidney transplant or removal, did not have any tumors or neoplasms, did not have anorexia or weight loss due to renal dysfunction, and did not have pyonephrosis. The examiner noted the Veteran had recurring proteinuria/albuminuria and transient edema. After examination, the Veteran noted there was no change to the VA established diagnosis. Specifically, the examiner found that lab results showed mild to moderate chronic kidney disease due to lab fluctuations. 

Analysis 

The Board finds that for the period of appeal prior to September 29, 2008, a compensable rating for the hypertension is not warranted under Diagnostic Code 7101 or 7541. For this period of appeal, the Veteran's blood pressure readings did not rise to the level diastolic readings of predominantly 100 or more or systolic readings of predominantly 160 or more to warrant a 10 percent rating under Diagnostic Code 7101. The Board acknowledges the Veteran's submissions showing his ongoing prescribed treatment for his hypertension with chronic kidney disease and higher blood pressure readings prior to 2006. However, the Board reiterates that it is a review of evidence during the current and relevant period on appeal that is applicable and the rating criteria does not indicate that continuous medication, one or more, for control of hypertension alone merits a compensable rating, in addition to continuous medication, there needs to be a showing of diastolic pressure predominantly 100 or more. The Board acknowledges the Veteran's continuous required medication for controlling his hypertension and intermittent diastolic readings of 160 or more, specifically 178/76 in March 2007 and 163/73 in May 2007. The Board highlights that this was only two blood pressure readings out of more than 15 readings in the relevant period of appeal from 2006 to September 2008, thus not showing that systolic readings were predominantly 160 or more, and the Board also notes there was no showing that the Veteran's diastolic pressure was predominantly 100 or more during any point in this period on appeal. In addition, he did not have a formal diagnosis of chronic kidney disease during this period of appeal to warrant a rating under Diagnostic Code 7541. 

For the period of appeal from September 29, 2008 to July 25, 2011, a rating of 30 percent under Diagnostic Code 7101-7541 is currently assigned. A rating in excess of 30 percent is not warranted for this period on appeal. The Veteran was first diagnosed with chronic kidney, stage one to two, on September 29, 2009. A higher 60 percent rating is not warranted because the Veteran was not shown to have symptoms of constant albuminuria with some edema, a definite decrease in kidney function, or hypertension at least 40 percent disabling under Diagnostic Code 7101. There have been no diastolic readings of 120 or more. At worst, the Veteran has had intermittent edema and the Veteran has had ongoing assessments of chronic kidney disease, stage one to two. The Board acknowledges that the Veteran's September 2012 correspondence that indicated he had chronic kidney disease, stage two to three, on April 12, 2011. However, an April 12, 2011 private treatment record from ENMA specifically showed otherwise and found the Veteran had chronic kidney stage two, with GFRs of 56-60 mL/min, with no reference of worsening to stage three. 

For the period from July 26, 2011, the first evidence of record specifically noting the Veteran's chronic kidney disease had worsened from stage one to two to two to three, a 60 percent rating is warranted under Diagnostic Code 7541. Since the July 26, 2011 VA treatment record, the Veteran's chronic kidney disease has fluctuated between stage two and three chronic kidney disease. Treating providers during this period on appeal have also noted the Veteran's GFR readings had dipped to as low as 40s, predominantly remaining below 60 mL/min. As such, a 60 percent rating is warranted for "definite decrease in kidney function." A higher 80 percent rating is not warranted because the evidence does not show persistent edema and albuminuria with BUN 40 to 80mg%; or, creatinine 4 to 8mg%; or, generalized poor health characterized by lethargy, weakness, anorexia, weight loss, or limitation of exertion as due solely to his hypertension with chronic kidney disease. Instead, the Board notes that the Veteran has consistently reported a fairly controlled diet and feeling well, as well as conducting some exercise and/or remaining active despite joint pains, except for intermittent edema and fatigue. VA treatment records do not show persistent albuminuria and instead shows no to minimal proteinuria/albuminuria throughout the period on appeal. See January 2009, June 2009, July 2011, August 2011, October 2011, January 2012, July 2012, April 2017 VA treatment records. As of the most recent November 2017 VA examination, the examiner noted only recurring proteinuria/albuminuria, not constant or persistent. 

In sum, the Board finds that the Veteran's hypertension with chronic kidney disease does not warrant a compensable rating prior to September 29, 2008 and also does not warrant a rating in excess of 30 percent from September 29, 2008 to July 25, 2011. However, resolving reasonable doubt in the Veteran's favor, the Board finds there is a definite decrease in kidney function to warrant a 60 percent rating, but no higher, from July 26, 2011 for the Veteran's hypertension with chronic kidney disease.











 (CONTINUED ON NEXT PAGE)



ORDER

Service connection for allergic rhinitis is denied.

Prior to September 29, 2008, a compensable rating for hypertension is denied.

From September 29, 2008 to July 25, 2011, a rating in excess of 30 percent for hypertension with chronic kidney disease is denied.

From July 26, 2011, a rating of 60 percent, but no higher, for hypertension with chronic kidney disease is granted.



______________________________________________
THOMAS H. O'SHAY
Veterans Law Judge, Board of Veterans' Appeals



Department of Veterans Affairs