**John S. WILSON, Appellant,**

v.

**Edward J. DERWINSKI, Secretary of Veterans Affairs, Appellee.**

**No. 91–169.**

United States Court of Veterans Appeals.

Submitted March 6, 1992.

Decided July 22, 1992.

Kenneth M. Carpenter, Topeka, Kan., was on the brief for appellant.

James A. Endicott, Jr., Gen. Counsel, Barry M. Tapp, Asst. Gen. Counsel, Pamela L. Wood, Deputy Asst. Gen. Counsel, and John D. McNamee, Washington, D.C., were on the brief, for appellee.

Before NEBEKER, Chief Judge, and FARLEY and HOLDAWAY, Associate Judges.

HOLDAWAY, Associate Judge:

Appellant, appeals an October 4, 1990, decision of the Board of Veterans' Appeals (BVA or Board) which denied service connection for an acquired psychiatric disorder, including post-traumatic stress disorder (PTSD). Appellant claims that the Department of Veterans Affairs (VA) and the BVA have misapplied the regulations relating to the grant of service connection for PTSD by requiring objective confirmation of stressors. *See* 38 U.S.C. § 1154 (formerly § 354); 38 C.F.R. § 3.303(a) (1991); 38 C.F.R. § 3.304(d) (1991). Appellant also contends that a recent change in a VA Adjudication Procedure Manual (M21–1) regulation should be applied to his claim. *See Karnas v. Derwinski*, 1 Vet.App. 308,

312–13 (1991). Appellant filed a motion for oral argument on this issue. That motion is denied. We find that the BVA applied the proper statutory and regulatory standards in its decision and that the findings of fact made by the Board are plausible. *See Gilbert v. Derwinski*, 1 Vet.App. 49, 52 (1990). Accordingly, the BVA decision is affirmed.

Appellant had active service between March 1971 and June 1972. He served in Vietnam between August 1971 and March 1972. His principal duty during that time was as a radio operator. He was listed as absent without leave (AWOL) from March 25, 1972, to May 23, 1972. Appellant claims several events as stressors during his service in Vietnam. Shortly after his arrival at Cam Ranh Bay, the ammunition dump exploded. Appellant states he was knocked unconscious by the explosion. Due to the numerous casualties, appellant did not seek medical treatment for this. He also states that while he was on perimeter patrol duty, he saw a fellow soldier killed. Later in his tour of duty, appellant claims that he missed his helicopter ride to a new duty station. He attempted to hitch a ride with a Vietnamese civilian but this resulted in his being kidnapped and forced to steal for his captors. This period of time corresponds with the time he was listed as AWOL. Appellant also alleges witnessing an incident in which his fellow soldiers tortured and raped a Vietnamese woman.

Appellant states that he started taking drugs, while in Vietnam, to treat the pain of a back injury. He used drugs after discharge as a way to avoid his nightmares and flashbacks of his experiences in Vietnam. In 1987 and 1988, appellant was hospitalized for treatment of drug problems. In March 1988, appellant applied for VA compensation for several disabilities including PTSD. He also claimed to have been a prisoner of war (POW). The VA Regional Office (VARO) requested his service records, verification of POW status, and current treatment records. On December 28, 1988, the VARO denied service connection for PTSD stating:

> With regard to a diagnosis of [PTSD], the Board does note the diagnosis on current Veterans Administration exami-

nation. However, the diagnosis is questionable in view of the fact of the shown unreliability of the veteran's statements with regard to his Vietnam service and the multiple lengthy hospitalizations which have failed to produce any findings or diagnosis of [PTSD]. Based on the evidence in its entirety at this time, with careful review, the Board finds the diagnosis of [PTSD] is unsupported, therefore, having no basis and service connection must be denied, based on the absence of a confirmed stressor.

Appellant filed a Notice of Disagreement and requested a personal hearing. During the hearing, he elaborated on the time he was listed as AWOL, clarifying that that period of time was what he based his POW claim on. The hearing officer again requested any information to confirm appellant's claimed stressors from the U.S. Army and Joint Services Environmental Support Group (ESG). The ESG replied that it was able to only document the explosion of the ammunition dump at Cam Ranh Bay and certain assignments of appellant in Vietnam. Other incidents, as described by appellant, either could not be documented or were shown *not* to have happened. His POW claim could not be verified, nor could his claim that he was assigned to perimeter patrols. The hearing officer continued the denial of appellant's claim for service connection for PTSD.

Appellant appeared before the BVA on April 20, 1990. In addition to his testimony, appellant submitted an affidavit from a VA physician stating:

(4) That I have conducted a thorough review of [appellant's] medical records and completed during this hospitalization a complete psychiatric examination of [appellant] and find him to be suffering from a combination of chronic depression and [PTSD].

(5) That after reviewing his medical records and discussing with the patient his military service, I am satisfied within a reasonable degree of medical certainty that both of these conditions relate to his military service in Vietnam.

(6) That after discussing with the patient the stressors which he has identified as

having took [sic] place during his military service I am satisfied within a reasonable degree of medical certainty that these stressors were sufficient to produce and justify a diagnosis of [PTSD].

Appellant also submitted a copy of the Social Security Administration decision awarding him benefits effective June 9, 1987.

On October 4, 1990, the BVA denied service connection for acquired psychiatric disorder, including PTSD. In the Discussion and Evaluation section of the decision, the Board stated:

The American Psychiatric Association Manual of Mental Disorders referred to in the regulations cited above provides that an essential diagnostic criterion for post-traumatic stress disorder is the existence of a recognizable stressor. Thus, service connection will not be established for post-traumatic stress disorder on the basis of a diagnosis unsupported by credible evidence of an in-service stressor of sufficient gravity to evoke significant symptoms in almost anyone. While we have noted the representative's assertion to the contrary, the question of whether a specific event reported by a veteran as a stressor [was a stressor] is a question of fact for the Board to decide, involving as it does factors as much historical as psychological. The Board is not bound to accept the opinion or conclusion of a psychiatrist or any other person as to this fact question, merely because of their reported expertise in a particular field.

With respect to the reported stressors, the veteran has stated that on his arrival in Vietnam an ammunition dump exploded and that he was rendered unconscious for approximately two hours. Although the record shows that a large amount of ammunition was destroyed by sappers at Cam Ranh Bay 4 or 5 days after the veteran arrived in Vietnam, there has not been presented any persuasive evidence that he was anywhere near the ammunition dump that was attacked at that huge base or that he sustained a concussion. Morever [sic], he reported in March 1983 that he had sustained a concussion due to a mortar round in 1972. At his May 1989

hearing, the veteran testified that he was transferred from Cam Ranh Bay to the 198th Light Infantry Brigade at Chu Lai and that the base there was subject to rocket and sniper attacks; however the [ESG] found that the records did not show that there were rocket, sniper, or mortar attacks on Chu Lai during the period that the veteran was there. While he has also stated that he engaged in combat after he was transferred to Da Nang, the 516th Adjutant General Company, was an administrative service, non-combat unit.

... A thorough review of the case file reveals no evidence whatsoever which corroborates the veteran's account [of being kidnapped by a Vietnamese civilian], and the service records do not show that he was ever listed as a prisoner of war or missing in action. Moreover, there is no evidence, other than that provided by the veteran's own account, that he witnessed the death of a friend in an artillery attack at Phu Loi in April 1972 or that he saw the torture and rape of a Vietnamese woman there. In fact, the evidence showed that there were no artillery attacks on Phu Loi during the period in question and that the veteran was listed as absent without leave from March 25 to May 23, 1972.

....

After a thorough review of all the evidence, we have concluded that the stressors reported by the veteran are either unsupported by or inconsistent with the records of his Vietnam service....

*John S. Wilson*, BVA —— (Oct. 4, 1990). Appellant filed a timely Notice of Appeal.

## ANALYSIS

The applicable statute, in pertinent part, is **38 U.S.C. § 1154:**

(b) In the case of any veteran who engaged in combat with the enemy in active service with a military ... organization of the United States during a period of war, ... the Secretary [of Veterans Affairs] shall accept as sufficient proof of service-connection of any disease or injury alleged to have been incurred in or aggravated by such service satisfactory lay or other evidence of service incurrence or aggravation of such injury or disease, if consistent with the circumstances, conditions, or hardships of such service, notwithstanding the fact that there is not official record of such incurrence or aggravation in such service, and to that end, shall resolve every reasonable doubt in favor of the veteran. Service-connection of such injury or disease may be rebutted by clear and convincing evidence to the contrary. The reasons for granting or denying service-connection in each case shall be recorded in full.

This statute is implemented by 38 C.F.R. § 3.303(a) and 38 C.F.R. § 3.304(d), which in pertinent part states:

**38 C.F.R. § 3.303 Principles relating to service connection.**

(a) *General.* Service connection connotes many factors but basically it means that the facts, shown by evidence, establish that a particular injury or disease resulting in disability was incurred coincident with service in the Armed Forces, or if preexisting such service, was aggravated therein. This may be accomplished by affirmatively showing inception or aggravation during service or through the application of statutory presumptions. Each disabling condition ... for which he seeks a service connection must be considered on the basis of the places, types and circumstances of his service as shown by service records, the official history of each organization in which he served, his medical records and all pertinent medical and lay evidence. Determination as to service connection will be based on review of the entire evidence of record, with due consideration to the policy of the Department of Veterans Affairs to administer the law under a broad and liberal interpretation consistent with the facts in each case.

**38 C.F.R. § 3.304 Direct Service Connection; wartime and peacetime.**

(d) *Combat.* Satisfactory lay or other evidence that an injury or disease was incurred or aggravated in combat will be accepted as sufficient proof of service connection if the evidence is consistent with the circumstances, conditions or

hardships of such service even though there is no official record of such incurrence or aggravation.

Prior to March 26, 1991, the M21–1 directed VARO to require confirmation of stressors in the service records:

Paragraph 50.45

. . . .

d. Reasonably Supportive Evidence of Stressors in Service. Any evidence available from the service department indicating that the veteran served in the area in which the stressful event is alleged to have occurred and any evidence supporting the description of the event are to be made part of the record. If the claimed stressor is related to combat, receipt of the Purple Heart, combat Infantryman Badge, Bronze Star, and other similar citations are, in the absence of information to the contrary, considered supportive evidence of participation in a stressful episode. Other supportive evidence includes, but is not limited to, plane crash, ship sinking, explosion, rape or assault, . . . . POW status is conclusive evidence of an in-service stressor.

e. A history of a stressor as related by the veteran is, in itself, insufficient. Service records must support the assertion that the veteran was subjected to a stressor of sufficient gravity to evoke symptoms in almost anyone. The existence of a recognizable stressor or accumulation of stressors must be supported. It is important that the stressor be described as to its nature, severity and date of occurrence.

Subparagraph e. was changed, on March 26, 1991, to read:

e. If the evidence shows the veteran engaged in combat with the enemy and the claimed stressor is related to combat, no further development is necessary. See subparagraph d above. If the claimed stressor is not combat related, a history of a stressor as related by the veteran is, in itself, insufficient. Service records must support the assertion that the veteran was subjected to a stressor of sufficient gravity to evoke symptoms in almost anyone. The existence of a recognizable stressor or accumulation of stressors must be supported. It is important that the stressor be described as to its nature, severity and date of occurrence.

The Secretary of Veterans Affairs argues that the previous version of paragraph 50.45(e) is the applicable version in this case because the provision was not amended until after the BVA decision was issued. The appellant argues, on the other hand, that under *Karnas,* if a law or regulation changes while a claim is still in the administrative or judicial process, the version more favorable to the veteran must be applied. The appellant is correct, but it avails him nothing in this case. Even under the more "liberal" version there must be evidence that he was engaged in combat with the enemy. As the excellent analysis of the BVA points out, there was no such evidence.

 "Contrary to the contentions of the appellant, the BVA was not bound to accept his uncorroborated account of his Vietnam experiences . . ." in the face of objective evidence which indicates that those experiences did not take place. *See Wood v. Derwinski,* 1 Vet.App. 190, 192 (1991), *reconsidered,* 1 Vet.App. 406 (1991). Just because a physician or other health professional accepted appellant's description of his Vietnam experiences as credible and diagnosed appellant as suffering from PTSD does not mean the BVA was required to grant service connection for PTSD. "The BVA has the duty to assess the credibility and weight to be given the evidence. Such assessments will be overturned only if 'clearly erroneous.'" *Wood,* 1 Vet.App. at 193 (citing *Gilbert,* 1 Vet. App. at 52).

The BVA, in this case, has provided an unusually thorough and specific discussion of the evidence. Each claimed stressor has been discussed and the contradictions between appellant's various claims and the information provided by the ESG pointed out. The BVA decision is a model of how facts should be evaluated and weighed. The BVA decision is "plausible" and cannot be overturned. Accordingly, the Court

holds that the October 4, 1990, BVA decision is AFFIRMED.