Citation Nr: 1523826 
Decision Date: 06/04/15 Archive Date: 06/16/15

DOCKET NO. 13-34 626 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Roanoke, Virginia


THE ISSUES

1. Entitlement to an initial compensable disability rating, based on the rating schedule, for bilateral hearing loss.

2. Entitlement to an initial compensable disability rating, on an extraschedular basis, for bilateral hearing loss.


WITNESSES AT HEARING ON APPEAL

The Appellant and his spouse


ATTORNEY FOR THE BOARD

K. J. Kunz, Counsel



INTRODUCTION

The Veteran had active service from November 1966 to November 1996.

This appeal comes before the Board of Veterans' Appeals (Board) from an October 2012 rating decision by the Roanoke, Virginia Regional Office (RO) of the United States Department of Veterans Affairs (VA). In that decision, the RO granted service connection for bilateral hearing loss, and assigned a 0 percent (noncompensable) disability rating.

In May 2014, the Veteran had a Board hearing at the Board's offices in Washington, DC, before the undersigned Veterans Law Judge (VLJ). A transcript of that hearing is of record.

The Veteran submitted additional evidence in June and July 2014. He waived RO consideration of the additional evidence.

The Board notes that the Veteran has also raised a concern that it appeared to him that the RO discontinued including in the combined disability rating the 10 percent rating assigned for his service-connected tinnitus. The Board wishes to reassure the Veteran that the RO did not discontinue service connection for tinnitus, the 10 percent rating for it, or the effect of that 10 percent rating on the combined rating. In the October 2012 rating decision, the RO granted service connection for tinnitus and assigned a 10 percent disability rating. That rating decision shows the ratings for tinnitus and hearing loss and the combined rating for both disabilities. In a May 2013 rating decision, the RO granted service connection for additional disabilities. The May 2013 rating decision shows the ratings for all of the then service-connected disabilities, including tinnitus. The combined rating of 80 percent listed in that rating decision is the correct combined rating for the disabilities in accordance with the way VA combines ratings under 38 C.F.R. § 4.25.

The issue of higher disability ratings, on an extraschedular basis, for bilateral hearing loss is addressed in the REMAND portion of the decision below and is REMANDED to the Agency of Original Jurisdiction (AOJ).

FINDINGS OF FACT

1. From May 2, 2011, through June 2, 2014, audiological testing showed hearing levels no worse than level I in the right ear and level VI in the left ear.

2. From June 3, 2014, audiological testing showed hearing levels of level IV in the right ear and level VIII in the left ear.


CONCLUSIONS OF LAW

1. From May 2, 2011, through June 2, 2014, the rating schedule criteria for a compensable disability for bilateral hearing loss have not been met. 38 U.S.C.A. §§ 1155, 5107 (West 2014); 38 C.F.R. § 4.87, Diagnostic Code 6260 (2014).

2. From June 3, 2014, the rating schedule criteria for a 20 percent disability rating for bilateral hearing loss have been met. 38 U.S.C.A. §§ 1155, 5107; 38 C.F.R. § 4.87, Diagnostic Code 6260.


REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

Duties to Notify and Assist

VA has a duty to notify and assist claimants in substantiating a claim for VA benefits. 38 U.S.C.A. §§ 5100, 5102, 5103A, 5107, 5126 (West 2014); 38 C.F.R. §§ 3.102, 3.156(a), 3.326(a) (2014). Under the notice requirements, VA is to notify the claimant of what information or evidence is necessary to substantiate the claim; what subset of the necessary information or evidence, if any, the claimant is to provide; and what subset of the necessary information or evidence, if any, VA will attempt to obtain. 38 C.F.R. § 3.159(b). Also, in Bryant v. Shinseki, 23 Vet. App. 488, 493-94 (2010), the United States Court of Appeals for Veterans Claims (Court) held that 38 C.F.R. § 3.103(c)(2) requires that that the VLJ who conducts a Board hearing fulfill duties to (1) fully explain the issues and (2) suggest the submission of evidence that may have been overlooked.

VA provided the Veteran notice in a letter issued in August 2011, before the initial decision on his claims. In that letter, VA advised the Veteran what information was needed to substantiate claims for service connection. That letter also informed the Veteran how VA assigns disability ratings and effective dates.

In the May 2014 Board hearing, the undersigned VLJ fully explained the issues and suggested the submission of evidence that may have been overlooked. The Veteran has not asserted that VA failed to comply with 38 C.F.R. § 3.103(c)(2) or identified any prejudice in the conduct of the Board hearing. The Board therefore finds that, consistent with Bryant, the VLJ who conducted the hearing complied with the duties set forth in 38 C.F.R. § 3.103(c)(2), and that any error provided in notice during the Veteran's hearing constitutes harmless error.

The Veteran's claims file contains service treatment records, post-service treatment records, reports of VA examinations, and a transcript of the March 2014 Board hearing. The VA examination reports are adequate to allow a determination on the issue that the Board is deciding at this time.

The Board finds that the Veteran was notified and aware of the evidence needed to substantiate the claim, as well as the avenues through which he might obtain such evidence, and the allocation of responsibilities between the Veteran and VA in obtaining such evidence. The Veteran has actively participated in the claims process by providing evidence and argument. Thus, he was provided with a meaningful opportunity to participate in the claims process, and he has done so.

Hearing Loss Rating Based on the Rating Schedule

The Veteran contends that his hearing loss produces impairment, particularly in employment, that warrants a higher disability rating, either based on the rating schedule or on an extraschedular basis. Service connection for his bilateral hearing loss was established effective May 2, 2011.

VA assigns disability ratings by evaluating the extent to which a veteran's service-connected disability adversely affects his ability to function under the ordinary conditions of daily life, including employment, by comparing his symptomatology with the criteria set forth in the VA Schedule for Rating Disabilities (rating schedule). 38 U.S.C.A. § 1155; 38 C.F.R. Part 4, including §§ 4.1, 4.2, 4.10. If two ratings are potentially applicable, the higher rating will be assigned if the disability picture more nearly approximates the criteria required for that rating. Otherwise, the lower rating will be assigned. 38 C.F.R. § 4.7. In determining the current level of impairment, the disability must be considered in the context of the whole recorded history, including service medical records. 38 C.F.R. § 4.2. The Court has held that, at the time of the assignment of an initial rating for a disability following an initial award of service connection for that disability, separate ratings can be assigned for separate periods of time based on the facts found, a practice known as "staged" ratings. Fenderson v. West, 12 Vet. App. 119, 126 (1999).

When there is an exceptional disability picture, such that the rating schedule criteria do not reasonably describe a claimant's disability level and symptomatology, an RO may refer a case to the VA Under Secretary for Benefits or to the Director of the VA Compensation and Pension Service for consideration of an extraschedular rating. See 38 C.F.R. § 3.321(b)(1) (2014); see also Thun v. Peake, 22 Vet. App. 111, 115 (2008). Extraschedular ratings are limited to cases in which it is impractical to apply the regular standards of the rating schedule because there is an exceptional or unusual disability picture, with such related factors as frequent hospitalizations or marked interference with employment. 38 C.F.R. § 3.321(b)(1).

The Board must assess the credibility and weight of all the evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. See Masors v. Derwinski, 2 Vet. App. 181 (1992); Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992); Hatlestad v. Derwinski, 1 Vet. App. 164 (1991); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). Equal weight is not accorded to each piece of evidence contained in the record; every item of evidence does not have the same probative value.

When there is an approximate balance of positive and negative evidence regarding any issue material to the determination of a claim, VA shall give the benefit of the doubt to the claimant. 38 U.S.C.A. § 5107. To deny a claim on its merits, the evidence must preponderate against the claim. Alemany v. Brown, 9 Vet. App. 518, 519 (1996), citing Gilbert, 1 Vet. App. at 54.

Under the VA rating schedule, hearing impairment is evaluated based on audiological testing, including a puretone audiometry test and the Maryland CNC controlled speech discrimination test. 38 C.F.R. § 4.85. The puretone threshold average is the average of the puretone thresholds, in decibels, at 1000, 2000, 3000, and 4000 Hertz, shown on a puretone audiometry test. 38 C.F.R. § 4.85. To find the appropriate disability rating based on test results, the puretone threshold average for each ear is considered in combination with the percentage of speech discrimination to establish a hearing impairment level, labeled from I to XI. See 38 C.F.R. § 4.85, Table VI. The hearing impairment levels of both ears are then considered together to establish a disability rating for the hearing loss. See 38 C.F.R. § 4.85, Table VII. There are additional provisions for certain exceptional patterns of hearing impairment. See 38 C.F.R. § 4.86 (2014). The assembled records of testing of the Veteran's hearing have not shown any of the exceptional patterns of hearing impairment that are addressed under 38 C.F.R. § 4.86; so the provisions of that section do not apply in this case. The Court has indicated that, in evaluating service-connected hearing loss, disability ratings are derived by a mechanical application of the rating schedule to the numeric designations after audiometric evaluations are performed. Lindenmann v. Principi, 3 Vet. App. 345, 349 (1992). Tables VI and VII are reproduced below:



 (CONTINUED ON NEXT PAGE)



TABLE VI
Numeric Designation of Hearing Impairment
Based on Puretone Threshold Average and Speech Discrimination

Percentage of 
Discrimination Puretone Threshold Average

0-41
42-49
50-57
58-65
66-73
74-81
82-89
90-97
98+
92-100
I
I
I
II
II
II
III
III
IV
84-90
II
II
II
III
III
III
IV
IV
IV
76-82
III
III
IV
IV
IV
V
V
V
V
68-74
IV
IV
V
V
VI
VI
VII
VII
VII
60-66
V
V
VI
VI
VII
VII
VIII
VIII
VIII
52-58
VI
VI
VII
VII
VIII
VIII
VIII
VIII
IX
44-50
VII
VII
VIII
VIII
VIII
IX
IX
IX
X
36-42
VIII
VIII
VIII
IX
IX
IX
X
X
X
0-34
IX
X
XI
XI
XI
XI
XI
XI
XI



 (CONTINUED ON NEXT PAGE)


Table VII
Percentage Evaluations for Hearing Impairment

LEVEL OF HEARING
IN BETTER EAR
XI 
100* 










X 
90 
80 









IX 
80 
70 
60 








VIII 
70 
60 
50 
50 







VII 
60 
60 
50 
40 
40 






VI 
50 
50 
40 
40 
30 
30 





V 
40 
40 
40 
30 
30 
20 
20 




IV 
30 
30 
30 
20 
20 
20 
10 
10 



III 
20 
20 
20 
20 
20 
10 
10 
10 
0 


II 
10 
10 
10 
10 
10 
10 
10 
0 
0 
0 

I 
10 
10 
0 
0 
0 
0 
0 
0 
0 
0 
0 
 
XI
X
IX
VIII
VII
VI
V
IV
III
II
I
 LEVEL OF HEARING IN POORER EAR

* Entitled to special monthly compensation under 38 C.F.R. 3.350. [64 FR 25206, May 11, 1999] 

On VA audiological examination in August 2011, the Veteran reported difficulty hearing clients and testimony in court in his work as an attorney. On audiological evaluation, puretone thresholds, in decibels, were as follows:





HERTZ



1000
2000
3000
4000
RIGHT
20
40
65
90
LEFT
35
70
100
100

Speech recognition scores were 96 percent in the right ear and 72 percent in the left ear. The puretone threshold averages were 54 decibels in the right ear and 76 decibels in the left ear. Under Table VI, the hearing impairment levels were I in the right ear and VI in the left ear. Under Table VII, the test results are consistent with a 0 percent rating.

In the May 2014 Board hearing, the Veteran reported that he works as an attorney, in the area of criminal law. He stated that, even with hearing aids, he had great difficulty hearing and understanding what people were saying. He indicated that this posed a great problem in court, where people frequently whispered. He stated that he had particular difficulty understanding the higher-pitched speech of women, which caused problems in professional interactions with women who were clients, lawyers, or court personnel. He noted that clients and prospective clients were unhappy when he did not understand what they said, and that his failure to understand speech often made him seem unintelligent. He reported that his difficulties with his work due to his hearing impairment had led him to reduce his caseload, and that he was in the process of giving up his practice. His wife stated that he usually did not hear what she was saying unless he was looking at her. She stated that he had difficulty hearing in group conversations and usually gave up and withdrew from them.

On June 3, 2014, the Veteran underwent private audiological testing. He reported having difficulty hearing speech, including at work at a table or in a courtroom. He stated that he had particular difficulty understanding the speech of women and people speaking softly. It was reported that he played the television too loud, and his wife stated that he tended to withdraw from group conversations. On audiological evaluation, puretone thresholds, in decibels, were as follows:




HERTZ



1000
2000
3000
4000
RIGHT
25
50
75
85
LEFT
35
75
115
120

Speech recognition scores were 80 percent in the right ear and 56 percent in the left ear. The puretone threshold averages were 59 decibels in the right ear and 86 decibels in the left ear. Under Table VI, the hearing impairment levels were IV in the right ear and VIII in the left ear. Under Table VII, the test results are consistent with a 20 percent rating.

In a June 2014 statement, the Veteran wrote that his hearing loss severely interfered with his post-service work as a prosecutor and criminal defense lawyer. He indicated that he missed statements at trial, became less certain and less assertive in his advocacy, and lost substantial business and revenue. He indicated that his difficulty hearing increased his anxiety and PTSD symptoms. He stated that his hearing disability was the determining factor in his decision to end his legal career.

The private and VA examinations were performed by clinicians with appropriate training, using methods consistent with 38 C.F.R. § 4.85. The examiners noted the Veteran's account of difficulty hearing. The Board finds that the examinations were adequate for rating purposes, and that they have great probative value regarding the Veteran's hearing levels. See Martinak v. Nicholson, 21 Vet. App. 447, 455-56 (2007). The Veteran's expression and description of his difficulty hearing has probative value regarding the effects of his hearing loss on daily functioning. The test results have greater probative value, however, on the question of the particular levels of his hearing loss.

Prior to the private testing in 2014, the VA testing in 2011 showed hearing levels consistent with a 0 percent rating, and no testing showed levels consistent with a higher rating. The evidence prior to the 2014 testing therefore does not meet the rating schedule criteria for a compensable rating.

The June 2014 private testing showed hearing levels consistent with a 20 percent rating. The Board therefore grants a 20 percent rating from June 3, 2014. No testing has shown hearing levels consistent with the rating schedule criteria for a rating higher than 20 percent.

In support of higher ratings on an extraschedular basis, the Veteran has described how his hearing loss has impaired him in his work as a trial lawyer. His accounts suggest his hearing loss has markedly interfered with his employment. The Board does not have the authority to assign, in the first instance, higher ratings on an extraschedular basis under 38 C.F.R. § 3.321(b)(1). When an extraschedular rating may be warranted, the Board must refer the case to designated VA officials. See Bagwell v. Brown, 9 Vet. App. 377 (1996). In this case, the Board is making such a referral in the remand section of this decision, below.

The Court has indicated that VA must consider, in an increased rating claim, whether the record indirectly raises the issue of unemployability. Rice v. Shinseki, 22 Vet. App. 447 (2009). The Veteran has stated that his service-connected hearing loss produces impairment that led him to decide to give up his employment as a trial attorney. He has not indicated, however, that his hearing loss and other service-connected disabilities make him unable to secure or follow any kind of substantially gainful occupation. The record thus has not raised the issue of unemployability.


ORDER

From May 2, 2011, through June 2, 2014, a compensable disability rating, based on the rating schedule, for bilateral hearing loss is denied.

From June 3, 2014, a 20 percent disability rating, based on the rating schedule, for bilateral hearing loss is granted, subject to the laws and regulations controlling the disbursement of monetary benefits.


REMAND

The Veteran's claim for higher ratings, on an extraschedular basis, for his hearing loss is supported by evidence that his hearing impairment has markedly interfered with his employment as a trial lawyer. The Board therefore is remanding the issue to the RO to refer it to the Director of the VA Compensation and Pension Service, to consider whether higher ratings are warranted on an extraschedular basis for the Veteran's bilateral hearing loss.

Accordingly, the case is REMANDED for the following action:

1. Provide the Veteran's claims file to the Director of the VA Compensation and Pension service for review. Ask the Director to make a determination as to whether higher disability ratings are warranted on an extraschedular basis for the Veteran's bilateral hearing loss.

2. Thereafter, review the expanded record and consider the remanded claim. If that claim remains denied, issue a supplemental statement of the case and afford the Veteran an opportunity to respond. Thereafter, return the case to the Board for appellate review if otherwise in order.

The Board intimates no opinion as to the ultimate outcome of the matter that the Board has remanded. The Veteran has the right to submit additional evidence and argument on that matter. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



____________________________________________
MATTHEW D. TENNER
Veterans Law Judge, Board of Veterans' Appeals


Department of Veterans Affairs