﻿Citation Nr: AXXXXXXXX
Decision Date: 03/31/20 Archive Date: 03/31/20

DOCKET NO. 190408-16876
DATE: March 31, 2020

ORDER

New and relevant evidence having been received; the claim of entitlement to service connection for hearing loss is reopened. 

Entitlement to service connection, to include as due to exposure to contaminated drinking water at Camp Lejeune and exposure to herbicides, for gallbladder condition is denied.

Entitlement to service connection, to include as due to exposure to contaminated drinking water at Camp Lejeune and exposure to herbicides, for pancreatitis is denied.

Entitlement to service connection, to include as due to exposure to contaminated drinking water at Camp Lejeune and exposure to herbicides, for liver condition is denied.

REMANDED

Entitlement to service connection for bilateral hearing loss is remanded.

Entitlement to service connection, to include as due to exposure to contaminated drinking water at Camp Lejeune and exposure to herbicides, for multiple myeloma is remanded.

Entitlement to service connection, to include as due to exposure to contaminated drinking water at Camp Lejeune and exposure to herbicides, for kidney failure is remanded.

Entitlement to service connection, to include as due to exposure to contaminated drinking water at Camp Lejeune and exposure to herbicides, for prostate cancer is remanded.

Entitlement to service connection for an acquired psychiatric disorder is remanded.

Entitlement to service connection, to include on a secondary basis and as due to exposure to contaminated drinking water at Camp Lejeune and exposure to herbicides, for restless leg syndrome is remanded.

FINDINGS OF FACT

1. An October 1991 rating decision denied entitlement to service connection for left ear hearing loss. The Veteran was notified of that decision, but did not initiate an appeal, and new and material evidence was not received within one year of the notice of that rating decision.

2. New evidence was received after the October 1991 rating decision that is relevant to the issue of entitlement to service connection for hearing loss.

3. The Veteran’s gallbladder condition did not originate in service, within a year of service, and is not otherwise etiologically related to the Veteran’s active service.

4. The Veteran’s pancreatitis did not originate in service, within a year of service, and is not otherwise etiologically related to the Veteran’s active service.

5. The Veteran’s liver condition did not originate in service, within a year of service, and is not otherwise etiologically related to the Veteran’s active service.

CONCLUSIONS OF LAW

1. The October 1991 rating decision, which denied the Veteran’s claim of entitlement to service connection for left ear hearing loss, is final. 38 U.S.C. § 7105(c); 38 C.F.R. §§ 3.104, 3.156, 20.201, 20.302, 20.1103 

2. The criteria for readjudicating the claim for service connection for hearing loss have been met. 38 C.F.R. § 3.156(d).

3. The criteria for service connection for gallbladder condition have not been met. 38 U.S.C. §§ 1110, 1131, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309.

4. The criteria for service connection for pancreatitis have not been met. 38 U.S.C. §§ 1110, 1131, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309.

5. The criteria for service connection for liver condition have not been met. 38 U.S.C. §§ 1110, 1131, 5103, 5103A, 5107; 38 C.F.R. §§ 3.102, 3.159, 3.303, 3.307, 3.309.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from August 1961 to November 1964. 

This matter is before the Board of Veterans’ Appeals (Board) on appeal from a March 2019 rating decision by a Department of Veterans Affairs Regional Office (RO). 

Within the framework of the AMA, in April 2019, the appellant submitted VA Form 10182, Decision Review Request Board Appeal (Notice of Disagreement), and elected a Hearing with a Veterans Law Judge. 38 C.F.R. § 19.2(d). In this regard, the Board notes that under the hearing lane option, the Board will consider evidence received at the hearing and within 90-days following the hearing.

The requested Board hearing was held in October 2019 before the undersigned. A copy of the transcript of that hearing has been associated with the claims file.

New and Relevant Evidence

The Veteran asserts that he submitted evidence to reopen his service connection claim for hearing loss that is new and relevant and warrants readjudication of the issue.

VA will readjudicate a claim if new and relevant evidence is presented or secured. 38 C.F.R. § 3.156(d). “Relevant evidence” is evidence that tends to prove or disprove a matter in issue. 38 C.F.R. § 3.2501(a)(1).

The Veteran’s claim for service connection for left ear hearing loss was originally denied in an October 1991 rating decision. The Agency of Original Jurisdiction (AOJ) denied the claim on the basis that chronic hearing loss was not shown during active duty service. No new and material evidence was received by VA within one year of the issuance of the October 1991 rating decision. As such, the October 1991 rating decision became final. See 38 U.S.C. § 7105; 38 C.F.R. §§ 3.104, 3.156, 20.1103; see also Bond v. Shinseki, 659 F.3d 1362, 1367–68 (Fed. Cir. 2011).

At the time of the October 1991 rating decision, the record contained service treatment records (STRs) including an August 1961 enlistment examination showing audiometric thresholds within normal limits. A November 1961 STR shows the Veteran complained of loss of hearing in his left ear. He further complained of tinnitus. The Veteran was assessed with an upper respiratory infection. A June 1964 State Department Duty examination noted a normal bilateral 15/15 whispered test. A November 1964 separation examination also noted a normal 15/15 whispered test bilaterally. The Veteran denied any ear trouble.

In his July1991 claim, the Veteran asserted in-service traumatic noise exposure to rifles (stating he developed ringing in his right ear). The Veteran stated that his symptoms had worsened since that time.

The Veteran underwent a VA examination in August 1991. The examiner noted the following audiometric testing results:

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 10 15 25 45 45

LEFT 40 50 55 45 45

Speech recognition scores were 92 percent for the right ear and 76 percent for the left ear. The Veteran reported being around automatic weapons fire during service. No etiological opinion was provided.

Since the October 1991 rating decision, evidence added to the claims file includes a June 1997 VA medical record showing the Veteran reported that his hearing was getting worse.

In a July 2018 VA Form 21-4138, Statement in Support of Claim, the Veteran asserted additional noise exposure, including due to working on track vehicles during service without hearing protection. 

The Veteran underwent another VA examination in November 2018. The examiner noted the following audiometric testing results:

 HERTZ 

 500 1000 2000 3000 4000

RIGHT 50 50 55 55 55

LEFT 65 65 65 60 65

Speech recognition scores were 72 percent for the right ear and 68 percent for the left ear. The examiner stated that a medical opinion as to etiology of the Veteran’s bilateral hearing loss could not be provided without resorting to speculation. In this regard, the examiner noted that the Veteran had normal hearing at enlistment but that since the separation examination only used whispered testing, hearing loss could not be ruled out. Accordingly, in the absence of “discrete frequency testing” at separation from service, the examiner stated that comments regarding hearing loss related to in-service noise exposure would be speculative. However, the examiner further found that the Veteran’s reported tinnitus was etiologically related to significant noise exposure while in close proximity to machine gun fire during service.

At an October 2019 Board hearing, the Veteran testified that during service he was exposed to traumatic noises including weapons fire and claymore mines. The Veteran also testified that he talked to his drill sergeant about ringing in his ears during boot camp. 

As noted above, the October 1991 rating decision denied service connection on the basis that chronic hearing loss was not shown during active duty service. While evidence added to the claims file following the October 1991 rating decision also does not directly show chronic hearing loss during service, the evidence does show that the Veteran was found to have been exposed to traumatic noise exposure during service. Accordingly, in-service noise exposure has been conceded. 

In consideration of lay statements provided by the Veteran as to a continuity of symptomatology of hearing loss since he reported symptoms of hearing loss and tinnitus during service, the Board finds that newly added evidence is new because it was not previously before the agency decision makers, and that it is relevant because it directly relates to a finding of significant noise exposure during service. Accordingly, new and relevant evidence has been received in order to readjudicate the Veteran’s claim for entitlement to service connection for hearing loss. Thus, the Veteran’s petition to readjudicate his claim is granted. 

Service Connection

Service connection may be granted for a disability resulting from disease or injury incurred in or aggravated during service. 38 U.S.C. §§ 1110, 1131; 38 C.F.R. § 3.303. In order to establish entitlement to service connection, there must be (1) evidence of a current disability; (2) medical, or in certain circumstances, lay evidence of in-service incurrence or aggravation of a disease or injury; and (3) a causal connection between the claimed in-service disease or injury and the current disability. Shedden v. Principi, 381 F.3d 1163 (Fed. Cir. 2004).

Service connection may be presumed for certain chronic diseases which develop to a compensable degree within one year after discharge from service, even though there is no evidence of the disease during the period of service. That presumption is rebuttable by probative evidence to the contrary. 38 U.S.C. §§ 1101, 1112, 1113, 1137; 38 C.F.R. §§ 3.307, 3.309(a).

Lay evidence presented by a veteran concerning continuity of symptoms after service may not be deemed to lack credibility solely because of a lack of contemporaneous medical evidence. Buchanan v. Nicholson, 451 F.3d 1331 (2006). The Board has the authority to discount the weight and probity of evidence in light of its own inherent characteristics and its relationship to other evidence. Madden v. Gober, 125 F.3d 1477 (Fed. Cir. 1997). 

The Board must assess the credibility and weight of all the evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. Masors v. Derwinski, 2 Vet. App. 181 (1992); Wilson v. Derwinski, 2 Vet. App. 614 (1992); Hatlestad v. Derwinski, 1 Vet. App. 164 (1991); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). Equal weight is not accorded to each piece of evidence contained in the record; every item of evidence does not have the same probative value.

The Board must determine whether the evidence supports the claim or is in relative equipoise, with the appellant prevailing in either case, or whether the preponderance of the evidence is against the claim, in which case, service connection must be denied. Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

1. Liver Condition, Gallbladder Condition, and Pancreatitis

The Veteran seeks entitlement to service connection for a liver and gallbladder condition and pancreatitis. Specifically, the Veteran asserts that he developed the above-mentioned conditions due to exposure to contaminated drinking water while he was stationed at Camp Lejeune. Alternatively, the Veteran asserts that his liver condition, gallbladder condition and pancreatitis are etiologically related to exposure to herbicides while he was stationed in Okinawa, Japan. In this regard, a review of the Veteran’s military personnel records shows he was stationed at Camp Lejeune approximately between July 1963 and July 1964. The Veteran’s military personnel records also show that he served in Okinawa approximately between August 1962 and March 1963.

Initially, the Board notes that the STRs are completely silent for any complaints or treatment related to a liver condition, gallbladder condition or pancreatitis. Instead, an August 1961 enlistment and June 1964 State Department Duty examination show the Veteran denied having any liver or gallbladder trouble or gallbladder stones. Additionally, serology tests were negative. Serology testing was also negative on the Veteran’s November 1964 separation examination.

Post-service medical evidence shows that in November 2001, the Veteran’s liver profile was within normal limits except for a mild elevation of the total bilirubin. In October 2004, a VA medical record noted the Veteran’s liver function tests were increased over normal levels 6 months prior. The Veteran denied any past trouble with his gallbladder. A June 2006 VA medical record shows that the Veteran was negative for hepatitis A, B and C.

In May 2014, the Veteran’s hepatic and lipid profile was within normal limits. In June 2018, a VA medical record noted the Veteran was admitted to the hospital for elevated liver enzymes and elevated lipase. The Veteran was assessed with pancreatitis secondary to gallstones. A June 2018 VA medical record also shows the Veteran’s spouse stated the Veteran had emergency surgery related to a ruptured gallbladder, duct bile full of stones, and pancreatitis. Another June 2018 private medical record shows the Veteran was assessed with choledocholithiasis and acute pancreatitis secondary to gallstones. The Veteran underwent a laparoscopic cholecystectomy. Additionally, a June 2018 VA medical record shows the Veteran was diagnosed with biliary acute pancreatitis. 

At an October 2019 Board hearing, the Veteran testified that he believed his liver condition, gallbladder condition and pancreatitis resulted from exposure to contaminated drinking water at Camp Lejeune and/or resulted from exposure to herbicides. In addition, the Veteran asserted that at the time he had his gallbladder removed, he had to undergo an emergency procedure to drain his pancreas. Accordingly, he asserted that his pancreatitis was secondary to his gallbladder condition. 

After a review of the evidence of record, the Board finds that entitlement to service connection for a liver condition, gallbladder condition and pancreatitis are not warranted.

With regard to the Veteran’s claim that his liver condition, gallbladder condition and pancreatitis are etiologically related to exposure to herbicides, the Board notes that, absent affirmative evidence to the contrary, there is a presumption of exposure to herbicides (to include Agent Orange) for all veterans who served in Vietnam during the Vietnam Era. See 38 U.S.C. § 1116(f) and 38 C.F.R. § 3.307(a)(6)(iii). If a veteran was exposed to an herbicide agent during active service, certain diseases shall be service-connected if the requirements of 38 C.F.R. § 3.307(a)(6) are met, even though there is no record of such disease during service, provided further that the rebuttable presumption provisions of 38 C.F.R. § 3.307(d) are also satisfied. See 38 C.F.R. § 3.309(e). VA has determined that there is no positive association between exposure to herbicides and any other condition for which it has not specifically determined that a presumption of service connection is warranted. See Notice, 59 Fed. Reg. 341-346 (1994).

The Board notes that the Veteran did not serve in Vietnam, and he is therefore not presumed to have been exposed to herbicides. Additionally, the Veteran’s noted liver condition, gallbladder condition and pancreatitis are not listed in 38 C.F.R. § 3.309(e) as diseases recognized by VA regulations as being presumptively associated with herbicide exposure. Accordingly, the Board finds that service connection on a presumptive basis based on herbicide exposure is not warranted. 

With regard to the Veteran’s claim that his liver condition, gallbladder condition and pancreatitis are etiologically related to exposure to contaminated drinking water at Camp Lejeune, the Board notes that service connection may be granted on a presumptive basis for certain diseases associated with exposure to contaminants (defined as the volatile organic compounds trichloroethylene (TCE), perchloroethylene (PCE or PERC), benzene, and vinyl chloride) in the on-base water supply located at Camp Lejeune, even though there is no record of such disease during service, if they manifest to a compensable degree at any time after service, in a veteran, former reservist, or a member of the National Guard, who had no less than 30 days (consecutive or nonconsecutive) of service at the United States Marine Corps Base Camp Lejeune and or Marine Corps Air Station New River in North Carolina, during the period beginning on August 1, 1953, and ending on December 31, 1987. 38 C.F.R. § 3.307(a)(7).

The following diseases are deemed associated with exposure to contaminated water at Camp Lejeune: kidney cancer, liver cancer, Non-Hodgkin’s lymphoma, adult leukemia, multiple myeloma, Parkinson’s disease, aplastic anemia and other myelodysplastic syndromes, and bladder cancer. 38 C.F.R. § 3.309(f). Therefore, the Veteran’s diagnosed liver condition, gallbladder condition and pancreatitis are not listed in 38 C.F.R. § 3.309(f) as diseases recognized by exposure to contaminated drinking water at Camp Lejeune.

Despite these above findings with regard to presumptions associated with herbicide exposure and exposure to contaminated drinking water at Camp Lejeune, the claimant is not precluded from establishing service connection with proof of actual causation. Combee v. Brown, 34 F.3d 1039 (Fed. Cir. 1994).

However, the Board notes that the objective medical evidence does not indicate the clinical presence of a liver condition, gallbladder condition or pancreatitis manifest to a compensable disabling degree within the first year following the Veteran’s separation from active duty in November 1964, such that service connection on a presumptive basis could be allowed under 38 C.F.R. §§ 3.307, 3.309. 

Moreover, there is no medical evidence etiologically linking the Veteran’s liver condition, gallbladder condition or pancreatitis to service. 

The Board does recognize the Veteran’s lay statements and notes they may be competent to support a claim for service connection by supporting the occurrence of lay-observable events or the presence of disability or symptoms of disability subject to lay observation. Jandreau v. Nicholson, 492 F.3d 1372, 1377 (Fed. Cir. 2007), see also Buchanan v. Nicholson, 451 F.3d 1331 (Fed. Cir. 2007). However, the Veteran has not offered any lay statements linking his liver condition, gallbladder condition or pancreatitis to service other than due to exposure to herbicides or contaminated drinking water at Camp Lejeune. As this is a complex medical question, it is beyond the competence of a lay person. As there is no evidence that the Veteran has the medical qualifications to offer an opinion as to whether his liver condition, gallbladder condition or pancreatitis are related to exposure to herbicides or contaminated drinking water at Camp Lejeune, his lay statements in this matter are of little probative value. See Jandreau v. Nicholson, 492 F.3d 1372 (Fed. Cir. 2007); see also Kahana v. Shinseki, 24 Vet. App. 428, 438 (2011). As noted above, the Veteran has not provided any medical evidence etiologically linking his liver condition, gallbladder condition or pancreatitis to service, nor does the medical evidence of record indicate any such etiological association.

The Board acknowledges that the Veteran has not been afforded a VA examination with respect to his claims for service connection for his liver condition, gallbladder condition, or pancreas condition, but finds no such examination was required because the evidence does not indicate that the claimed disability, or symptoms thereof, may be associated with the Veteran’s active service. 38 U.S.C. § 5103A(d); McLendon v. Nicholson, 20 Vet. App. 79, 81 (2006). As discussed above, the Board finds there is no competent evidence that any liver, gallbladder, or pancreas condition may be related to service, to include any exposure to herbicides or contaminated water. Therefore, the Board finds a VA medical opinion is not necessary to decide the claims. 38 C.F.R. § 3.159(c)(4)(i)(C).

The Board has considered the evidence discussed above and finds that the weight of the evidence is against the Veteran’s claims of entitlement to service connection for a liver condition, gallbladder condition and pancreatitis. Accordingly, the Board finds that the preponderance of the evidence is against the claim for service connection for those conditions claimed as secondary to exposure to herbicides or contaminated drinking water at Camp Lejeune. Although the Veteran is entitled to the benefit-of-the-doubt where the evidence is in approximate balance, the benefit-of-the-doubt doctrine is inapplicable where, as here, the preponderance of the evidence is against the claims for service connection. The claims are denied. 38 U.S.C. § 5107(b); 38 C.F.R. § 3.102; Gilbert v. Derwinski, 1 Vet. App. 49 (1990).

REASONS FOR REMAND

1. Bilateral Hearing Loss

As noted above, the Veteran’s STRs show that the Veteran complained of loss of hearing in his left ear in November 1961. He further complained of tinnitus. The Veteran was assessed with an upper respiratory infection.

The record further shows that the Veteran has been provided with two VA examinations, neither of which provided an etiological opinion. With regard to the most recent November 2018 VA examination, the examiner stated that a medical opinion as to etiology of the Veteran’s bilateral hearing loss could not be provided without resorting to speculation. In this regard, the examiner noted normal hearing at enlistment but stated that since the separation examination only used whispered testing, hearing loss could not be ruled out. 

However, the examiner did not address the Veteran’s lay statements as to the onset of his symptoms or to his reports of continuity of chronicity, or explain why the Veteran’s lay statements are not probative to the issue of etiology. In this regard, STRs do show that the Veteran complained of left hear hearing loss during service. The Veteran also reported that he developed symptoms of ringing in his right ear during service and stated that his hearing loss symptoms had worsened since that time. See July 1991 Claim. Additionally, a June 1987 VA medical record shows the Veteran reported that his hearing was getting worse. The Board further notes that the examiner did provide a favorable nexus opinion for tinnitus on the basis that the Veteran was found likely exposed to significant noise while in close proximity to machine gun fire. Accordingly, the examiner conceded in-service noise exposure. 

Therefore, as the examiner did not address the in-service evidence of hearing loss or the Veteran’s lay statement as to onset and continuity of symptoms, the Board finds the November 2018 VA examination inadequate and another VA examination is necessary to properly adjudicate this issue on appeal.

2. Multiple Myeloma

At an October 2019 Board hearing, the Veteran testified that he had been diagnosed with multiple myeloma by a dermatologist in 1995, and that he believed his multiple myeloma resulted from either exposure to contaminated drinking water at Camp Lejeune or due to herbicide exposure. With regard to herbicide exposure, the Veteran stated that while he was stationed in Okinawa, Japan, the base he was stationed on sprayed Agent Orange to keep foliage down and that it was also stored at that location. In addition, the Veteran stated that he was referred to a skin specialist in 1995 by the Tuscaloosa VA medical center where he was treated for multiple myeloma.

The Board notes that multiple myeloma is a presumptive condition under 38 C.F.R. § 3.309(f)(8) for those who had service at Camp Lejeune between August 1953 and December 1987 for at least 30 consecutive or non-consecutive days. Service connection for multiple myeloma may be also be established on a legal presumption based on exposure to herbicide agents, including Agent Orange, where a veteran served on active duty in the Republic of Vietnam (RVN) during the Vietnam era (from January 1962 to May 1975), or where actual exposure has been shown.

A review of the record does not reveal any medical records relating to treatment for or a diagnosis of multiple myeloma. In this regard, the Board notes that the claims file does not contain any medical treatment records from 1995.

As the Veteran has identified treatment for multiple myeloma in 1995 via referral by the Tuscaloosa VA medical center, the Board finds that efforts should be made to obtain any outstanding relevant treatment records.

3. Prostate Cancer and Kidney Failure

The Veteran seeks service connection for prostate cancer and kidney failure. Specifically, the Veteran asserts that his prostate cancer and kidney failure were caused by either exposure to contaminated drinking water at Camp Lejeune or due to herbicide exposure while he was stationed in Okinawa, Japan.

The STRs include an August 1961 enlistment examination noting a normal endocrine system and negative serology testing. The Veteran denied any rectal disease, kidney stones or blood in his urine. A December 1963 STR shows the Veteran was seen related to painful urination for the past week. The Veteran also complained of left-sided back pain. No discharge was found. The clinician also noted no costovertebral angle (CVA) tenderness. A rectal examination noted a tender prostate and tender bilateral vesicles. The Veteran was diagnosed with possible vesiculitis in addition to another illegible diagnosis.

In January 2001, a VA medical record noted a diagnosis for renal dysfunction. A November 2001 VA medical record noted a diagnosis for mild stable chronic renal insufficiency. In March 2003, a VA medical record noted a potential problem with the Veteran’s kidney as evidenced by his lab work. An October 2007 VA prostate biopsy revealed adenocarcinoma of the prostate. The Veteran underwent a radical retropubic laparoscopic prostatectomy in January 2008. A September 2008 VA medical record noted a June 2008 diagnosis for chronic kidney disease.

With regard to whether the Veteran’s chronic kidney disease and chronic renal insufficiency are etiologically related to exposure to contaminated drinking water at Camp Lejeune, a VA examination was obtained in January 2019. The examiner opined that the conditions were “less likely than not (less than 50 percent probability)” etiologically related to exposure to contaminated drinking water. With regard to chronic kidney disease, the examiner noted that the Veteran had demonstrated significant risk factors associated with that condition including smoking and hypertension. The examiner further noted that the available medical literature suggested that acute renal injury was likely to occur soon after exposure to toxins found in the contaminated drinking water at Camp Lejeune including TCE and PCE, but that there were no documented records of acute renal injury during or after such exposure. Accordingly, based on the presence of other significant risk factors associated with chronic kidney disease and that lack of documented renal injury, the Veteran’s chronic kidney disease was found less likely than not caused by or a result of exposure at Camp Lejeune.

The Board finds the January 2019 VA examination inadequate. Specifically, the Board notes that despite a December 1963 Camp Lejeune STR noting symptoms of a possible kidney condition including painful urination and left-sided back pain which necessitated CVA testing, as well as rectal examination findings of a tender prostate and bilateral vesicles, the examiner based the negative nexus opinion, in part, on a finding that there was no documented record of acute renal injury during or after exposure at Camp Lejeune. At the very least, the examiner should have discussed the in-service symptoms.

With regard to the service connection claim for prostate cancer, despite the above-mentioned in-service finding for tender prostate during service, no VA examination has been obtained.

Accordingly, in order to properly adjudicate these issues on appeal, a VA examination is necessary to determine the nature and etiology of the Veteran’s kidney failure and prostate cancer.

4. Acquired Psychiatric Disorder and RLS

At an October 2019 Board hearing, the Veteran testified that he had been treated for an acquired psychiatric disorder, to include depression and bipolar disorder, at his VA medical center since 1995. In addition, the Veteran reported that his psychiatric disorder was directly related to shock he had experienced during military training. The Veteran additionally asserted that his psychiatric condition might be due to chemicals from contaminated drinking water. 

With regard to his service connection claim for RLS, at the Board hearing the Veteran testified that he believed his condition resulted from exposure to contaminated drinking water at Camp Lejeune which altered the chemistry in his body.

The Board notes that STRs include an August 1961 enlistment examination noting a normal psychiatric and neurological evaluation and the Veteran denied depression, excessive worry or nervous trouble of any sort. The Veteran’s military personnel records show he was administratively discharged due to charges concerning acts of homosexuality with a civilian in 1962, and bestiality prior to service. See October 1964 Recommendation for Disposition of Undesirable Discharge.

A July 1997 VA mental health record shows that the Veteran presented for the first time requesting an appointment in order to file a claim for a psychiatric disorder that he felt began in service. The Veteran was diagnosed with acute situational disorder. Another July 1997 VA medical record shows the Veteran complained of depression. No previous known episodes of deep depression were noted. The Veteran reported a history of shooting and killing a man prior to service. He further reported being scared during his entire time on active duty service. The Veteran was diagnosed with acute situational disorder with dysphoria, agitated depression and possible panic attacks. Additionally, another July 1997 VA mental health record noted a history of recurring depression the past 20 years. 

A May 2002 VA mental health record shows the Veteran reported stressor events including shooting his stepfather and being discharged from the Marine Corps due to homosexuality. He stated that being dismissed from the Marine Corps had bothered him for the past 30 years.

After a review of the evidence of record, and in consideration of the complicated issue on appeal, the Board finds that further development of this claim is necessary. First, the Board notes that while the Veteran has reported in-service stressors including being scared during boot camp and being administratively discharged for homosexuality, the AOJ has not undertaken any steps to develop the Veteran’s reported in-service stressors. Additionally, as noted above, the Veteran reported receiving treatment at his VA medical center since 1995. However, a review of the available VA medical records does not reveal any treatment prior to 1997. Lastly, in order to properly adjudicate this issue on appeal, the Board finds that a VA examination is necessary to determine the nature and etiology of any diagnosed psychiatric disorder.

With regard to RLS, the Board notes that a review of the VA medical records shows that this claimed condition may be related to the Veteran’s service connection claim for a psychiatric disorder. Specifically, a July 2018 VA mental health record noted the Veteran “still had restless legs and nightmares.” The medical record further noted that with regard ot RLS, the Veteran had been prescribed clonazepam once per week, a medication used to treat anxiety. 

Accordingly, the Board finds that the issue of entitlement to service connection for RLS is inextricably intertwined with the claim for an acquired psychiatric disorder. See Parker v. Brown, 7 Vet. App. 116 (1994); Harris v. Derwinski, 1 Vet. App. 180, 183 (1991) (two issues are “inextricably intertwined” when they are so closely tied together that a final Board decision cannot be rendered unless both are adjudicated). As the claims should be considered together, it follows that, any Board action on the RLS claim, at this juncture, would be premature. Hence, a remand of this matter is warranted, as well.

The matters are REMANDED for the following action:

1. With any necessary identification of sources by the Veteran, request all VA treatment records not already associated with the file from the Veteran’s VA treatment facilities dated from 1995 to 2019, to include any archived records.

2. With any necessary identification of sources by the Veteran, request any records pertaining to dermatological treatment for multiple myeloma in 1995.

3. Ask the Veteran to report any stressor events related to his service connection claim for a psychiatric disorder. Thereafter, the AOJ should undertake any further development deemed necessary. The Veteran identified stressors including being scared during boot camp and being administratively discharged for homosexuality,

4. After development outlined in steps 1 and 3 above is completed, schedule the Veteran for a VA examination with a psychiatrist or a psychologist. The examiner must determine whether the Veteran currently suffers from an acquired psychiatric disorder. The examiner should provide the following information:

(a) Provide a full multiaxial diagnosis. With respect to any psychiatric disorder found upon examination or identified during a review of the claims folder, the examiner should provide an opinion as to whether the diagnosed psychological disorder is it at least as likely as not (50 percent or greater probability) etiologically related to a period of active service. Please explain why or why not. The examiner should discuss the in-service stressors and lay statements provided by the Veteran including any stressor related to boot camp or being administratively discharged.

(b) With respect to any psychiatric disorder found upon examination or identified during a review of the claims folder, the examiner should opine as to whether the Veteran’s restless leg condition is a symptom of any such psychiatric disorder.

All indicated studies should be completed. Reasons should be provided for any opinion rendered. If the examiner is unable to provide an opinion without resort to speculation, an explanation as to why this is so should be provided and any additional evidence that would be necessary before an opinion could be rendered should be identified.

5. Schedule the Veteran for an examination by an appropriate examiner to determine the nature and etiology of the Veteran’s prostate cancer and renal failure. The examiner should provide the following opinions:

(a) Is it at least as likely as not (50 percent or greater probability) that the Veteran’s prostate cancer and renal failure is etiologically related to his period of service, to include as due to exposure to contaminated drinking water at Camp Lejeune? The examiner should discuss the December 1963 STR noting painful urination, left-sided back pain, CVA testing, and a rectal examination with findings of a tender prostate and bilateral vesicles with a possible diagnosis for vesiculitis.

The examiner should review pertinent documents in the Veteran’s claims file in connection with the examination. All indicated studies should be completed. Reasons should be provided for any opinion rendered. If the examiner is unable to provide an opinion without resort to speculation, an explanation as to why this is so should be provided and any additional evidence that would be necessary before an opinion could be rendered should be identified.

6. Schedule the Veteran for an examination by an appropriate examiner to determine the nature and etiology of any diagnosed bilateral hearing loss. The examiner should provide the following opinion:

(a) Is it at least as likely as not (50 percent or greater probability) that any diagnosed bilateral hearing loss is etiologically related to his period of service?

The examiner should review pertinent documents in the Veteran’s claims file in connection with the examination. The examiner should discuss the November 1961 STR showing the Veteran complained of left ear hearing loss and tinnitus. The examiner should also discuss the Veteran lay statements as to continuity of symptomatology. If, after discussing the above, the examiner is unable to provide an opinion without resort to speculation, an explanation as to why this is so should be provided and any additional evidence that would be necessary before an opinion could be rendered should be identified. All indicated studies should be completed. Reasons should be provided for any opinion rendered. 

 

S. HENEKS

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board C. Lamb, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential, and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.