﻿Citation Nr: AXXXXXXXX
Decision Date: 01/29/21 Archive Date: 01/29/21

DOCKET NO. 200401-65129
DATE: January 29, 2021

ORDER

Entitlement to service connection for a neck disability is denied.

Entitlement to service connection for a neurological disability of the left arm is denied.

Entitlement to service connection for a low back disability is denied.

Entitlement to service connection for a neurological disability of the left lower leg is denied.

Entitlement to service connection for a neurological disability of the left foot is denied.

FINDINGS OF FACT

1. A neck disability, to include cervical disc prolapse and degenerative changes, did not have its onset in service, did not manifest within the one-year presumptive period, and is not otherwise related to the Veteran’s active military service.

2. A neurological disability of the left upper extremity did not have its onset in service, did not manifest within the one-year presumptive period, and is not otherwise related to the Veteran’s active military service.

3. A low back disability, to include degenerative arthritis/spondylosis of the thoracolumbar spine, did not have its onset in service, did not manifest within the one-year presumptive period, and is not otherwise related to the Veteran’s active military service.

4. A neurological disability of the left lower leg did not have its onset in service, did not manifest within the one-year presumptive period, and is not otherwise related to the Veteran’s active military service.

5. A neurological disability of the left foot did not have its onset in service, did not manifest within the one-year presumptive period, and is not otherwise related to the Veteran’s active military service.

CONCLUSIONS OF LAW

1. A neck disability was not incurred in or aggravated by the Veteran’s military service, and may not be presumed to have been so incurred. 38 U.S.C. §§ 101, 1101, 1112, 1113, 1116, 1131, 1137, 5107; 38 C.F.R. §§ 3.6, 3.102, 3.303, 3.307, 3.309.

2. A neurological disability of the left upper extremity was not incurred in or aggravated by the Veteran’s military service, and may not be presumed to have been so incurred. 38 U.S.C. §§ 101, 1101, 1112, 1113, 1116, 1131, 1137, 5107; 38 C.F.R. §§ 3.6, 3.102, 3.303, 3.307, 3.309.

3. A low back disability was not incurred in or aggravated by the Veteran’s military service, and may not be presumed to have been so incurred. 38 U.S.C. §§ 101, 1101, 1112, 1113, 1116, 1131, 1137, 5107; 38 C.F.R. §§ 3.6, 3.102, 3.303, 3.307, 3.309.

4. A neurological disability of the left lower leg was not incurred in or aggravated by the Veteran’s military service, and may not be presumed to have been so incurred. 38 U.S.C. §§ 101, 1101, 1112, 1113, 1116, 1131, 1137, 5107; 38 C.F.R. §§ 3.6, 3.102, 3.303, 3.307, 3.309.

5. A neurological disability of the left foot was not incurred in or aggravated by the Veteran’s military service, and may not be presumed to have been so incurred. 38 U.S.C. §§ 101, 1101, 1112, 1113, 1116, 1131, 1137, 5107; 38 C.F.R. §§ 3.6, 3.102, 3.303, 3.307, 3.309.

REASONS AND BASES FOR FINDINGS AND CONCLUSIONS

The Veteran served on active duty from May 1973 to May 1977.

This matter comes before the Board of Veterans’ Appeals (Board) on appeal from a June 2018 rating decision, which denied the claims of entitlement to service connection for a neck disability and low back disability, as well as neurological disabilities of the left arm, left lower leg, and left foot.

The procedural history of this claim demonstrates that the Veteran’s original claims of service connection for the disabilities on appeal were originally denied in an April 2015 rating decision. The Veteran filed a supplemental claim in March 2018 and, in a June 2018 RAMP (Rapid Appeals Modernization Program) rating decision, the RO determined new and relevant evidence had been submitted to readjudicate the Veteran’s claims. The RO thereafter confirmed and continued the previous denials of the claims of entitlement to service connection for a neck disability and low back disability, as well as neurological disabilities of the left arm, left lower leg, and left foot. The Veteran filed a VA Form 21-0958, notice of disagreement (NOD) in May 2019 and a statement of the case (SOC) was issued in March 2020. On March 25, 2020, the Veteran filed a VA Form 10182 opting into the AMA; he requested direct review of the evidence considered by the Agency of Original Jurisdiction (AOJ).

1. Entitlement to service connection for a neck disability.

2. Entitlement to service connection for a neurological disability of the left arm.

In order to prevail on the issue of service connection for any particular disability, there must be evidence of a current disability; evidence of in-service occurrence or aggravation of a disease or injury; and medical evidence, or in certain circumstances, lay evidence, of a nexus between an in-service injury or disease and the current disability. See Shedden v. Principi, 381 F.3d 1163, 1167 (Fed. Cir. 2004).

Certain chronic diseases, including arthritis and an organic disease of the nervous system, may be presumed to have been incurred in or aggravated by service if manifest to a compensable degree within one year of discharge from active service. 38 U.S.C. § 1112; 38 C.F.R. §§ 3.307, 3.309. The option of establishing service connection through a demonstration of continuity of symptomatology rather than through a finding of nexus is specifically limited to the chronic disabilities listed in 38 C.F.R. § 3.309(a). See Walker v. Shinseki, 708 F.3d 1331 (Fed. Cir. 2013) (rejecting the argument that continuity of symptomatology in § 3.303(b) has any role other than to afford an alternative route to service connection for specific chronic diseases). In addition, service connection may be granted for any disease diagnosed after service when all the evidence establishes that the disease was incurred in service. 38 C.F.R. § 3.303(d).

Medical evidence is generally required to establish a medical diagnosis or to address questions of medical causation; lay assertions of medical status do not constitute competent medical evidence for these purposes. Lay assertions, however, may serve to support a claim for service connection by supporting the occurrence of lay-observable events or the presence of disability or symptoms of disability subject to lay observation. 38 U.S.C. § 1153(a); 38 C.F.R. § 3.303(a); Jandreau, 492 F.3d 1372, 1377 (Fed. Cir. 2007); see Buchanan v. Nicholson, 451 F. 3d 1331, 1336 (Fed. Cir. 2006) (addressing lay evidence as potentially competent to support presence of disability even where not corroborated by contemporaneous medical evidence).

The Board must assess the credibility and weight of all the evidence, including the medical evidence, to determine its probative value, accounting for evidence which it finds to be persuasive or unpersuasive, and providing reasons for rejecting any evidence favorable to the claimant. See Masors v. Derwinski, 2 Vet. App. 181 (1992); Wilson v. Derwinski, 2 Vet. App. 614, 618 (1992); Hatlestad v. Derwinski, 1 Vet. App. 164 (1991); Gilbert v. Derwinski, 1 Vet. App. 49 (1990). Equal weight is not accorded to each piece of evidence contained in the record; every item of evidence does not have the same probative value.

Here, the Veteran has asserted entitlement to service connection for neck disability and a neurological disability of the left upper extremity, which he contends were incurred during his active military service. See the Veteran’s statement dated May 2019. Specifically, he reports that he developed a neck disability with residual neurological disability of the left upper extremity as a result of a motorcycle accident on active duty. Id. For the reasons set forth below, the Board concludes that the preponderance of the evidence is against the claims. 38 U.S.C. § 1153; 38 C.F.R. § 3.306(b).

The Veteran served on active duty from May 1973 to May 1977. STRs dated in May 1974 indicate that the Veteran was involved in a motorcycle accident; he reported hip and back pain at that time. A February 1975 STR documented a second motorcycle accident, which had occurred two days prior; it was noted that the Veteran suffered from general aches and pains. There was no indication that the Veteran reported neck pain and neurological symptoms of the left upper extremity at the time of either in-service motorcycle accident. In fact, the Veteran’s STRs, including his May 1977 separation examination, do not document any complaints or diagnoses of neck or left upper extremity disabilities.

The Veteran’s post-service treatment records indicate that an August 2014 x-ray of the cervical spine revealed a chronic compression fracture at C5-C6. VA treatment records dated in January 2015 noted that the Veteran was evaluated for left upper extremity pain, paresthesias, and weakness in August 2014. Electrodiagnostic studies of the left upper extremity were completed in November 2014, which revealed normal results. The VA treatment provider stated that the Veteran reported left upper extremity pain and described postural neck pain. See the VA treatment records dated in January 2015. VA treatment records dated in May 2015 noted the Veteran’s complaint of neck pain with radiating left arm pain and weakness. Magnetic resonance imaging (MRI) of the cervical spine revealed cervical disc extrusion at C4-C5 level and mild broad-based central disc protrusion at the C5-C6 level. There were additional findings of narrowing of the thecal sac and mild impingement of the ventral aspect of the cervical cord at the identified levels. See the VA treatment records dated in May 2015.

The Veteran was afforded a VA medical opinion in June 2018 at which time the examiner determined that the claimed neck disability was less likely than not (less than 50 percent probability) incurred in or caused by motorcycle accidents in May 1974 and February 1975 during service. The examiner stated that the Veteran’s currently diagnosed cervical spine diagnoses “are at least as likely as not (50 percent or greater probability) caused by post service processes to include the natural aging.” The examiner indicated that there is no objective medical evidence to indicate that there is a nexus between the Veteran’s in-service motorcycle accidents and his neck disability. The STRs documenting the in-service accidents did not indicate any cervical involvement. The examiner continued, “[n]evertheless, no objective medical record evidence to indicate that the Veteran’s cervical injuries if any from motorcycle accidents May 1974 and February 1975 during service did not resolve without residual was found.” The examiner explained, “[n]o immediate objective post service medical record evidence to indicate treatment for chronic/ongoing cervical pain/condition/pathology was found.” The examiner explained that current imaging of the cervical spine shows diffuse degenerative changes, which “are more consistent with the natural ageing process rather than remote acute trauma. If the Veteran’s motorcycle accidents May 1974 and February 1975 during service would have caused his current Prescott HCS imaging findings then he would have had his symptoms manifest at that time but no objective medical record evidence to indicate such was found.”

When assessing the probative value of a medical opinion, the access to claims files and the thoroughness and detail of the opinion must be considered. The opinion is considered probative if it is definitive and supported by detailed rationale. See Prejean v. West, 13 Vet. App. 444, 448-49 (2000). The Court has held that claims file review, as it pertains to obtaining an overview of a claimant’s medical history, is not a requirement for private medical opinions. A medical opinion that contains only data and conclusions is not entitled to any weight. Further a review of the claims file cannot compensate for lack of the reasoned analysis required in a medical opinion, which is where most of the probative value of a medical opinion comes from. “It is the factually accurate, fully articulated, sound reasoning for the conclusion, not the mere fact that the claims file was reviewed, that contributes probative value to a medical opinion.” See Nieves-Rodriguez v. Peake, 22 Vet. App. 295 (2008).

Significantly, the June 2018 VA examiner has found no nexus between the Veteran’s military service and his claimed disabilities. The examiner’s opinion was based on a thorough review of the record, including the lay statements and medical evidence submitted by the Veteran, and the examiner explained the reasons for his conclusions based on an accurate characterization of the evidence of record. The Board therefore places significant weight on the findings of the June 2018 VA examiner. See Nieves-Rodriguez, supra; see also Bloom, 12 Vet. App. at 187 (the probative value of a physician’s statement is dependent, in part, upon the extent to which it reflects “clinical data or other rationale to support his opinion”). Given the explanation provided by the June 2018 VA examiner and the fact that the examiner clearly considered all relevant evidence and facts, the Board finds that the VA medical opinion provides an adequate basis for consideration of whether the Veteran’s claimed neck and left upper extremity disabilities are medically related to his military service.

Accordingly, the Board finds that the medical evidence demonstrating the absence of nexus between the currently diagnosed neck disability with left upper extremity symptoms and the Veteran’s active duty service outweighs the medical evidence suggestive of a nexus.

Finally, although the record shows a diagnosis of degenerative changes of the cervical spine, there is no probative evidence that arthritis was noted in service with continuity of symptomatology since service that is attributable to the chronic disease, nor is there any indication that arthritis was manifest to a compensable degree within one year of service separation. 38 U.S.C. §§ 1101, 1112, 1113, 1137; Walker v. Shinseki, 708 F.3d 1331, 1338 (Fed. Cir. 2013); Fountain v. McDonald, 27 Vet. App. 258 (2015); 38 C.F.R. §§ 3.303, 3.307, 3.309.

The Board has carefully considered the contentions of the Veteran that his claimed neck and left upper extremity disabilities were due to his military service. To this end, lay evidence may be competent on a variety of matters concerning the nature and cause of disability. See Davidson v. Shinseki, 581 F.3d 1313, 1316 (Fed. Cir. 2009); Kahana, 24 Vet. App. at 433, n. 4. In this case, the Veteran’s assertions as to etiology concern an internal medical process, which extends beyond an immediately observable cause-and-effect relationship that is of the type that the courts have found to be beyond the competence of lay witnesses. Cf. Jandreau, 492 F.3d at 1376 (lay witness capable of diagnosing dislocated shoulder); Barr v. Nicholson, 21 Vet. App. 303, 308-9 (2007); Falzone v. Brown, 8 Vet. App. 398, 403 (1995) (lay person competent to testify to pain and visible flatness of his feet); with Clemons v. Shinseki, 23 Vet. App. 1, 6 (2009) (“It is generally the province of medical professionals to diagnose or label a mental condition, not the claimant”); Woehlaert v. Nicholson, 21 Vet. App. 456, 462 (2007) (unlike varicose veins or a dislocated shoulder, rheumatic fever is not a condition capable of lay diagnosis); Jandreau, 492 F.3d at 1377, n. 4 (“sometimes the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer”). See also Colantonio v. Shinseki, 606 F.3d 1378, 1382 (Fed. Cir.2010) (recognizing that in some cases lay testimony “falls short” in proving an issue that requires expert medical knowledge). 

The Board is charged with weighing the positive and negative evidence; resolving reasonable doubt in the Veteran’s favor when the evidence is in equipoise. Considering the record, including post-service medical evidence, June 2018 VA examiner’s opinions, and lay evidence presented by the Veteran, the Board finds that the negative evidence is more persuasive and of greater evidentiary weight.

In conclusion, the preponderance of the evidence is against the claims of entitlement to service connection for a neck disability and a left upper extremity disability. Thus, the benefit-of-the-doubt rule does not avail the Veteran. See 38 U.S.C. § 5107(b); Gilbert, 1 Vet. App. at 54-56.

3. Entitlement to service connection for a low back disability.

4. Entitlement to service connection for a neurological disability of the left lower leg.

5. Entitlement to service connection for a neurological disability of the left foot.

Here, the Veteran has asserted entitlement to service connection for a back disability and neurological disabilities of the left lower extremity and foot, which he contends were incurred during his active military service. See the Veteran’s statement dated May 2019. Specifically, he reports that he developed a low back disability with residual neurological disability of the left lower extremity and foot as a result of a motorcycle accident on active duty. Id. For the reasons set forth below, the Board concludes that the preponderance of the evidence is against the claims. 38 U.S.C. § 1153; 38 C.F.R. § 3.306(b).

STRs dated in January 1974 indicated that the Veteran reported back pain since picking up a suitcase. STRs in dated in May 1974 reported that the Veteran was involved in a motorcycle accident; he reported hip and back pain at that time. STRs dated in June 1974 documented the Veteran’s report of experiencing intermittent low back pain for several years. It was noted that the Veteran continued to have low back pain following the May 1974 motorcycle accident; a notation of chronic low back pain was indicated. A May 1974 x-ray of the lumbar spine was within normal limits. A February 1975 STR documented a second motorcycle accident occurs two days prior; it was noted that the Veteran suffered from general aches and pains. An August 1975 x-ray of the lumbar spine was within normal limits. In September 1975, the Veteran reported continuing back pain. In October 1975, he indicated that he twisted his left leg. A twist injury to the left knee with subsequent arthralgia was indicated at that time. A November 1975 STR noted the Veteran’s report of left knee pain following the motorcycle accident one month prior; a lateral collateral ligament sprain was indicated. Left knee pain was again noted in January 1976 and September 1976. In December 1976, the Veteran was treated for complaints of back pain, which was noted to have continued from October 1976.

The Veteran’s post-service treatment records dated in April 2011 document his reported long history of back problems. The treatment provider indicated that the Veteran hurt his back last Fall and his pain was very localized. The Veteran additionally endorsed left leg weakness and left foot numbness. The examiner indicated that the Veteran had low back pain with radicular pain in the left leg. See the VA treatment records dated in April 2011. An April 2011 MRI revealed large L5-S1 herniated disc with nerve root displacement on the left side. VA treatment records dated in January 2012 documented left foot/leg weakness.

VA treatment records dated in January 2015 indicated that the Veteran had a successful left L5/S1 laminectomy in 2012 with residual paresthesias and weakness in leg and foot.

The Veteran was afforded a VA examination in March 2015 at which time the examiner confirmed diagnoses of degenerative arthritis and spondylosis of the thoracolumbar spine with possible left S1 nerve root involvement. The examiner indicated that the Veteran had undergone a laminectomy. The examiner explained,

Veteran only has abnormal sensation residual in the left leg which is similar but not typical of the S1 nerve root abnormality since it affects the top of the foot and toes instead of the bottom of the foot and the side of the calf. Therefore, this presentation is atypical and not diagnostic. He has no other objective findings to verify the S1 nerve root abnormality residual post-surgery. The limitation of lifting his according to the Veteran that he has strong musculature and full range of motion of his back suggesting greater capacity then related.

With respect to the question of nexus, the March 2015 VA examiner stated that the claimed low back disability was less likely than not (less than 50 percent probability) incurred in or caused by the claimed in-service injury, event or illness. The examiner reviewed the Veteran’s STRs and noted that the May 1974 and August 1975 examinations revealed a normal lumbar spine. The examiner further indicated that STRs dated in May 1974, June 1974, September 1975, and December 1976 did not document any physiologic presentation of the low back. The examiner additionally reported that the Veteran’s May 1977 separation examination did not document any back complaints. The examiner additionally stated that the 2011 imaging studies showed degenerative arthritis and disc disease/spondylosis, which the examiner determined “is age-related degenerative arthritis that occurred after military service. The examiner concluded that the Veteran’s low back disability is less likely than not caused by, the result of, or aggravated by his military service based on objective evidence in service.

In support of his claims, the Veteran submitted a December 2015 statement from Mr. J.C. who reported that he served with the Veteran and has continued to be friends with him for 40 years. Mr. J.C. reported that he was aware of the Veteran’s in-service motorcycle accident and the Veteran’s report of back symptomatology continuing from that time.

When assessing the probative value of a medical opinion, the access to claims files and the thoroughness and detail of the opinion must be considered. The opinion is considered probative if it is definitive and supported by detailed rationale. See Prejean, 13 Vet. App. at 448-49. The Court has held that claims file review, as it pertains to obtaining an overview of a claimant’s medical history, is not a requirement for private medical opinions. A medical opinion that contains only data and conclusions is not entitled to any weight. Further a review of the claims file cannot compensate for lack of the reasoned analysis required in a medical opinion, which is where most of the probative value of a medical opinion comes from. “It is the factually accurate, fully articulated, sound reasoning for the conclusion, not the mere fact that the claims file was reviewed, that contributes probative value to a medical opinion.” See Nieves-Rodriguez, supra.

Significantly, the March 2015 VA examiner found no nexus between the Veteran’s military service and his claimed disabilities. The examiner’s opinion was based on a thorough review of the record, including the lay statements and medical evidence submitted by the Veteran, and the examiner explained the reasons for his conclusions based on an accurate characterization of the evidence of record. The Board therefore places significant weight on the findings of the March 2015 VA examiner. See Nieves-Rodriguez, supra; see also Bloom, 12 Vet. App. at 187 (the probative value of a physician’s statement is dependent, in part, upon the extent to which it reflects “clinical data or other rationale to support his opinion”). Given the explanation provided by the March 2015 VA examiner and the fact that the examiner clearly considered all relevant evidence and facts, the Board finds that the VA medical opinion provides an adequate basis for consideration of whether the Veteran’s claimed low back and left lower extremity disabilities are medically related to his military service. The examiner concluded that, despite the Veteran’s in-service injuries and his reported symptoms, the nature of the current pathology indicated that it was more likely age-related. 

Accordingly, the Board finds that the medical evidence demonstrating the absence of nexus between the currently diagnosed thoracolumbar spine disability with left leg and foot symptoms and the Veteran’s active duty service outweighs the medical evidence suggestive of a nexus.

Although the record shows a diagnosis degenerative arthritis/spondylosis, there is no probative evidence that arthritis was noted in service with continuity of symptomatology since service that is attributable to the chronic disease, nor is there any indication that arthritis was manifest to a compensable degree within one year of service separation. 38 U.S.C. §§ 1101, 1112, 1113, 1137; Walker v. Shinseki, 708 F.3d 1331, 1338 (Fed. Cir. 2013); Fountain v. McDonald, 27 Vet. App. 258 (2015); 38 C.F.R. §§ 3.303, 3.307, 3.309.

The Board has carefully considered the contentions of the Veteran that his claimed low back and left lower leg and left foot disabilities were due to his military service. To this end, lay evidence may be competent on a variety of matters concerning the nature and cause of disability. Jandreau, 492 F.3d at 1377. The general principle that he experiences some symptoms of joint pain, which might be a symptom of disabilities, has some tendency to establish diagnoses. See Davidson, 581 F.3d at 1316; Kahana, 24 Vet. App. at 433, n. 4. The Veteran’s own assertions of entitlement to service connection concern an internal medical process, which extends beyond an immediately observable cause-and-effect relationship that is of the type that the courts have found to be beyond the competence of lay witnesses. Cf. Jandreau, 492 F.3d at 1376; Barr, 21 Vet. App. at 308-9; Falzone, 8 Vet. App. at 403 (lay person competent to testify to pain and visible flatness of his feet); with Clemons, 23 Vet. App. at 6 (“It is generally the province of medical professionals to diagnose or label a mental condition, not the claimant”); Woehlaert, 21 Vet. App. at 462 (unlike varicose veins or a dislocated shoulder, rheumatic fever is not a condition capable of lay diagnosis); Jandreau, 492 F.3d at 1377, n. 4 (“sometimes the layperson will be competent to identify the condition where the condition is simple, for example a broken leg, and sometimes not, for example, a form of cancer”). See also Colantonio, 606 F.3d at 1382 (recognizing that in some cases lay testimony “falls short” in proving an issue that requires expert medical knowledge).

The Board is charged with weighing the positive and negative evidence; resolving reasonable doubt in the Veteran’s favor when the evidence is in equipoise. Considering the record, including post-service medical evidence, March 2015 VA examiner’s opinion, and lay evidence presented by the Veteran, the Board finds that the negative evidence is more persuasive and of greater evidentiary weight.

In conclusion, the preponderance of the evidence is against the claims of entitlement to service connection for a low back disability, a neurological disability of the left leg, and a neurological disability of the left foot. Thus, the benefit-of-the-doubt rule does not avail the Veteran. See 38 U.S.C. § 5107(b); Gilbert, 1 Vet. App. at 54-56.

 

 

K. Conner

Veterans Law Judge

Board of Veterans’ Appeals

Attorney for the Board K. K. Buckley, Counsel

The Board’s decision in this case is binding only with respect to the instant matter decided. This decision is not precedential and does not establish VA policies or interpretations of general applicability. 38 C.F.R. § 20.1303.